447 So.2d 1255 (1984)
WAGNER & TRUAX CO., INC.
v.
BARNETT ENTERPRISES, INC.
No. CA 0986.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
Rehearing Denied April 25, 1984.
*1256 Edwin O. Schlesinger, Steeg & O'Connor, New Orleans, for Wagner & Truax Co., Inc., plaintiff-appellee.
Michael H. Bagot, Bagot & Gniady, New Orleans, for Barnett Enterprises, Inc., defendant-appellant.
Before SCHOTT, BARRY and WARD, JJ.
WARD, Judge.
This is a suit for payment of a real estate commission that Wagner & Truax Co., Inc. claims it earned by the efforts of its agent in procuring a lease of commercial property owned by defendant Barnett Enterprises, Inc. Wagner & Truax sued Barnett as the owner of the property and Farnsworth-Samuel, Ltd., as Barnett's listing agent, claiming both are liable to Wagner & Truax for the commission. The Civil District Court, Orleans Parish, Robert A. Katz, J., entered judgment in favor of Wagner & Truax and against Barnett for three and one-half percent of accrued and future rent under the lease and Barnett has appealed. Judgment was also rendered against Wagner & Truax and in favor of Farnsworth-Samuel, Ltd, denying Wagner & Truax's claim. Although Wagner & Truax has filed its brief asking that we affirm, it did not appeal the judgment against it and that judgment is therefore final.
We reverse in light of the facts and the law.
Barnett owns the property and had used it at one time as a retail outlet for its furniture business. Beginning in 1975, Barnett listed the property through a series of consecutive agreements with real estate agents: Stan Weber and Associates, *1257 Inc., Farnsworth-Samuel, Ltd., Latter and Blum, Inc., and Charles L. Crawford. Pat's Furniture Showrooms of New Orleans, Inc., leased the property on January 16, 1978, when Charles L. Crawford was the agent.
Pat's Furniture's president, J. Patton Mashburn, had been first introduced to the property in 1976 by an agent of Stan Weber, but little or nothing else was done to negotiate a lease. Real estate agents often work together, and later, in January of 1977, while the property was listed with Farnsworth-Samuel, Newton Fisk of Wagner & Truax contacted Mashburn with the approval of Farnsworth-Samuel and again showed Mashburn the property. In the spring of 1977 Fisk participated in three or four meetings to negotiate terms of a lease with Mashburn, Barnett and Farnsworth-Samuel. The parties, however, were unable to reach an agreement because Barnett demanded a percentage rental and Mashburn refused to pay it. When these negotiations failed, Mashburn began negotiating to lease property for a store in another city. After those negotiations also failed, in September of 1977 Mashburn told Fisk that although he was still interested in the Barnett property he would handle the matter himself. In spite of this, Fisk sent copies of a proposed lease to Mashburn and Barnett, but each received proposals with different lease forms, and each ignored the proposal. Fisk continued to contact Barnett through September and October, but his calls were unsolicited and sometimes they were about other properties. On October 3, 1977, Barnett listed the property with another broker, Charles Crawford, and after Crawford advertised the property Mashburn began negotiations with him. After Barnett, Crawford, and Mashburn met three or four times, those negotiations culminated in a lease of the property from Barnett to Pat's Furniture on January 16, 1978. Other evidence in the record indicates Barnett attempted to circumvent an obligation to pay a commission, although ultimately Barnett paid a commission of 1% to Charles Crawford.
Wagner & Truax, as a submitting broker affiliated with Farnsworth-Samuel, first filed suit only against Barnett, claiming there was either a contract between it and Barnett, or that it may rely on the listing contract between Barnett and Farnsworth-Samuel. That contract had a standard provision giving Farnsworth-Samuel the right to affiliate and work with other brokers to promote the lease of the property, and it provided for a commission to Farnsworth-Samuel, the listing broker, of 7% of the gross rent collected by the lessor. The listing contract, in existence from September 20, 1976 until March 20, 1977, also contained a broker's protective provision and required payment of the commission upon: "The sale, exchange or lease of said property, within one year after termination of this Authorization and all extensions hereof, to parties with whom [Farnsworth-Samuel] has negotiated before the termination [of the listing contract]..."
The record shows first, Wagner & Truax was a broker affiliated with Farnsworth-Samuel within the meaning of the listing agreement; second, Wagner & Truax, through Newton Fisk, had negotiated with Mashburn during the existence of the listing agreement; and third, the property was leased to Mashburn within the one year "protective" period. The record also shows that it is a custom among local real estate brokers that a listing broker, in this case Farnsworth-Samuel, evenly split commissions earned with a submitting broker, such as Wagner & Truax.
Although Farnsworth-Samuel had not yet sued Barnett, it claimed a commission was due. On May 4, 1981, after the filing of this lawsuit by Wagner & Truax against Barnett, Barnett and Farnsworth-Samuel compromised Farnsworth-Samuel's claims, and Barnett paid Farnsworth-Samuel $13,500. Upon learning of this, and fearing Farnsworth-Samuel may be a necessary party, Wagner & Truax joined Farnsworth-Samuel as a defendant in October, 1981. After Wagner & Truax sued Farnsworth-Samuel, Wagner & Truax discovered Barnett had promised to hold Farnsworth-Samuel harmless for any judgment in favor of *1258 Wagner & Truax. The Trial Judge, nevertheless, rendered judgment against Wagner & Truax and in favor of Farnsworth-Samuel. Since Wagner & Truax did not appeal, we do not have to decide if there was a contract between Wagner & Truax and Farnsworth-Samuel, nor if the Trial Judge erred when he found none existed.
Wagner & Truax takes two approaches to support its claim against Barnett. First, it contends that there was a contract, although not a written one, between it and Barnett. In the alternative, Wagner & Truax contends that it was a third party beneficiary of the listing contract between Barnett and Farnsworth-Samuel, contending its agent, Newton Fisk, brought Mashburn to Farnsworth-Samuel who negotiated with Mashburn during the existence of its listing contract. Since Barnett leased to Mashburn within one year after termination of the listing contract, Barnett owes Farnsworth-Samuel a commission by virtue of the protective provisions. Wagner & Truax, as an affiliated broker, was then entitled to one-half of Farnsworth-Samuel's commission in accord with the custom of the trade. Wagner & Truax strongly argues that Barnett's promise to pay Farnsworth-Samuel a commission when earned through its efforts or through those of any affiliated broker, was a stipulation pour autrui and that Wagner & Truax, an affiliated broker, was a third party beneficiary, and it may recover from Barnett.
The Trial Judge did not reach the question of whether there was a contract between Barnett and Wagner & Truax because he found that Wagner & Truax was the third party beneficiary of Barnett's promise to Farnsworth-Samuel, and he held that Barnett owed Wagner & Truax one-half of Farnsworth-Samuel's seven percent commission.
We believe the Trial Judge erred. We hold there was neither a contract between Barnett and Wagner & Truax nor a stipulation pour autrui, and Barnett is not liable to Wagner & Truax.
Before turning to the question of a stipulation pour autrui, we first hold there was no contract between Barnett and Wagner & Truax. In general, a real estate broker cannot recover a commission unless he shows an agreement for the payment of compensation for his services. A broker is not entitled to payment even on a quantum meruit basis where he has no express or implied contract with the party from whom he seeks a commission. Bender v. International Paint Co., 237 La. 569, 111 So.2d 775 (1959); Arnold v. Louisiana Health Service and Indemnity Co., 396 So.2d 1012 (La.App. 1st Cir.1981). There must be a contract of employment, either express or implied from the facts, and no one can claim compensation from one who did not employ him, however beneficial of valuable the services may prove. Rosenthal v. Cangelosi, 164 So. 502 (La.App. 1st Cir. 1935).
In this case there was no written listing contract between Barnett and Wagner & Truax, and the record does not indicate an oral or implied contract. Rather, the record shows that Barnett contracted only with its listing agent, Farnsworth-Samuel, and not with Wagner & Truax or any other brokers that Farnsworth-Samuel might have affiliated to lease the property.
Turning now to the stipulation pour autrui, the argument of Wagner & Truax is that it may recover its commission from Barnett as a third party beneficiary of the contract between Farnsworth-Samuel and Barnett wherein Barnett promised to pay Farnsworth-Samuel a commission. We disagree for the following reasons.
Article 1890 of the Louisiana Civil Code provides:
A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.
This Article describes what is known in Louisiana as the stipulation pour autrui, and when a commutative (bilateral) contract contains a stipulation pour autrui, *1259 the third person has a right of action against the promisor. However, the promisee or stipulator, the one who has obtained a promise from the promisor, must have intended to confer a benefit upon a third person by the promisor fulfilling his part of the contract.
Hence, the existence of a stipulation depends upon both the promisee's intention to confer a benefit upon a third party and the promisor's agreement to do so. In addition, the stipulated advantage or benefit must be contemplated by each of the contracting parties. Admittedly some of the cases seem to go beyond this. See Capital Bank & Trust Co. v. Core, 343 So.2d 284 (La.App. 1st Cir.) writ denied 345 So.2d 504 (La.1977). Nevertheless, we believe that at the time of the contract the promisor must at least have contemplated conferring a benefit on a third party beneficiary. State v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976). C.H. Leavell & Co. v. Glantz Contracting Corporation, 322 F.Supp. 779 (E.D.La.1971).
At the time Barnett and Farnsworth-Samuel entered into the listing agreement, Farnsworth-Samuel did not know who, if anyone, would be affiliated with it, and could not have contemplated eliciting a promise from Barnett to confer a benefit on Wagner & Truax. Although in the listing agreement Barnett recognized the right of Farnsworth-Samuel to affiliate other brokers, Barnett did not know who, if anyone, Farnsworth-Samuel would affiliate, and it is evident that Barnett did not promise Farnsworth-Samuel that it would pay a commission to Wagner & Truax. Rather, Barnett promised only to pay Farnsworth-Samuelno one elseto procure a lease of Barnett's property. Any agreement Farnsworth-Samuel made with affiliated brokers was not part of its contract with Barnett, and there was no obligation owed by Barnett to Wagner & Truax, even though Farnsworth-Samuel may well have owed a natural obligation to pay one-half of any commission received or any sum in settlement, including any amount paid under the hold harmless agreement.
Finally, the benefit in favor of the third party may not be merely incidental to the agreement in question. HMC Management Corp. v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4th Cir.1979) writ denied 378 So.2d 1384; 379 So.2d 11 (1980).
[N]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right. The problem is to separate the cases where an advantage has been stipulated from those where the advantage relied upon is merely an incident of the contract between the parties.
Smith, "Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui", 11 Tulane L.Rev. 18, 28 (1936).
And, while it is true Barnett's promise to pay a commission to Farnsworth-Samuel may have incidentally benefitted Wagner & Truax, since Farnsworth-Samuel would be obligated to split the commission with Wagner & Truax when it was paid, this is not a stipulation pour autrui.
In sum, we hold Barnett did not promise to pay Wagner & Truax a commission. Nor was there a stipulation pour autrui because it was never a "condition or consideration" of Barnett's contract with Farnsworth to confer a benefit or advantage to Wagner & Truax, although Wagner & Truax may have incidentally benefitted if Barnett paid Farnsworth-Samuel a commission.
Reversed. Wagner & Truax, Inc. is to pay all costs of trial and this appeal.