467 So.2d 74 (1985)
Fred R. MILLER, Jr., d/b/a Fred Miller Real Estate, Inc., et al.
v.
Carolyn Cohen PICK.
No. CA-2770.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1985.
Writ Denied June 17, 1985.
*75 Nathan Greenberg, Greenberg & Dallam, Gretna, for defendant-appellant.
Frank W. Middleton, III, Middleton & Wolf, Baton Rouge, for plaintiffs-appellees.
Before KLEES, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
This suit was instituted by three licensed real estate brokers, Fred R. Miller, Jr., Ben R. Franklin III, and Ronald G. Wolf against Carolyn Cohen Pick, individually and as the administratrix of the Succession of Tilden Pick, seeking a 6% real estate commission relative to a sale of property by Mrs. Pick. From an adverse judgment rendered by the lower court Mrs. Pick has perfected this appeal raising two issues for our determination.
First, she alleges that Franklin and Wolf cannot recover a commission directly from her since she did not employ them, nor did she have a listing agreement with them. Second, she urges that the activities of Miller were not a procuring cause of the eventual sale and thus the trial court was in error in so ruling.
On January 30, 1980 after being contacted by Miller about the sale of certain property she owned in Baton Rouge, Mrs. Pick sent a letter to Miller authorizing him to sell the property on her behalf to Mr. M.K. Wong.[1] This listing agreement was for a term of three months, provided a sales price of $439,000.00 and a 6% commission if a sale was consummated during the listing period. It is undisputed that there was no contractual relationship between Mrs. Pick and Franklin and Wolf. These two plaintiffs were completely unknown to the defendant at the time of the January 30th listing agreement.
The first issue raised by Mrs. Pick can be disposed of without going into a detailed analysis of the evidence. Suffice it to say that Wolf and Franklin argue that since they acted as co-brokers with Miller it is not necessary that they have a direct contractual relationship with the vendor. In essence they argue that they are third party beneficiaries of the contract Pick had with Miller. We reject this argument and agree with Mrs. Pick on this point.
In Wagner & Truax v. Barnett Enterprises, Inc., 447 So.2d 1255 (La.App. 4th Cir.1984), this Court had occasion to consider this issue. In that case we stated:
"In general, a real estate broker cannot recover a commission unless he shows an agreement for the payment of compensation for his services. A broker is not entitled to payment even on a quantum meruit basis where he has no express or implied contract with the party from whom he seeks a commission. (citations omitted) There must be a contract of employment, either express or implied from the facts, and no one can claim compensation from one who did not employ him, however beneficial or valuable the services may prove." Id. at 1258.

*76 In Wagner we also rejected the nonlisting agent's third party beneficiary argument on the basis that one who has obtained a promise from the promisor, must have intended to confer a benefit upon a third person by the promisor for filling his part of the contract. "Hence, the existence of a stipulation depends upon both the promisee's intention to confer a benefit upon a third party and the promisor's agreement to do so. In addition, the stipulated advantage or benefit must be contemplated by each of the contracting parties." Wagner & Truax v. Barnett Enterprises, Inc., supra at 1259.
It is clear to this court that at the time Pick and Miller entered into the listing agreement, Pick did not know that Franklin and Wolf would be affiliated with Miller. Although Miller had the right to affiliate or work with other brokers, absent an agreement to the contrary, Pick's only obligation for a commission was to Miller.
The second issue is whether the activities of Miller constituted a procuring cause of the sale so as to justify a commission. This is a factual determination and will require a more detailed analysis of the evidence.
The record reflects that Franklin and Wolf began a business relationship with Mr. Wong sometime in the later part of 1978. At that time they approached him about putting a branch of his Chinese Restaurant in a proposed mall they were attempting to develop on Lot 32,[2] Concord Park Subdivision. This project never materialized.
Mr. Wong contacted Franklin in December of 1979 to see if Lot 32 was still available for sale. Franklin then contacted Miller whom he knew had represented the Picks in the past on other transactions in the Baton Rouge area.
Miller had worked with Mr. Pick in the Baton Rouge area since approximately 1974. Pursuant to Franklin's request, Miller telephoned the Pick residence on December 16, 1979. After being told by Mrs. Pick that Mr. Pick had died recently she advised Miller that she was very much interested in selling Lot 32 as well as the Red Caboose Restaurant located on Lot 31. In late December of 1979 or early January of 1980 Mrs. Pick sent a listing agreement to Miller setting forth a price in the $200,000.00 range for both lots. Miller returned it to her stating that the listing was much too low as her property was worth much more than that. Finally on January 30, 1980, Mrs. Pick sent Miller a letter representing the listing agreement previously described herein.
The evidence shows that after Miller obtained the listing agreement, Franklin and Wolf engaged in extensive efforts to sell the Pick property to Mr. Wong. Various meetings and telephone conversations ensued whereby Franklin and Wolf tried to put a sales package together for Mr. Wong. This included discussions on renovation work on the existing Red Caboose Restaurant, financing possibilities, managerial aspects, traffic flow in the area, and suggesting names for the proposed new restaurant. They (Franklin and Wolf) kept in constant contact with Miller regarding their progress in convincing Mr. Wong to buy the property. This fact is substantiated by the appointment and phone memoranda introduced into evidence.
Mr. Wong was insistent that the price was too high, and that he was really only interested in the Red Caboose property (Lot 31) and not the vacant lot. Aware of that fact, Franklin and Wolf arranged for the individual sale of Lot 32 to a third party, and in fact a $90,000.00 offer was made to Mrs. Pick for that lot. She rejected that offer, basically because she wanted to sell both and not split them.
Apparently sometime in March the agents became concerned that Mr. Wong was trying to circumvent the listing agreement by dealing directly with the owner. *77 As a result of their suspicions they sent a registered letter to Mrs. Pick, in care of Miller, advising that Wong had been dealing with them. At about the same time Miller personally visited Wong to try to sell the property and at the same time advise him that he, as the purchaser, would not pay a commission upon the eventual sale of the property. That responsibility would be entirely Mrs. Pick's. Miller also sent Mrs. Pick a letter shortly after receiving the notification from Franklin and Wolf in which he advised her of their "client registration" of Mr. Wong.
The listing agreement between Pick and Miller expired on April 30, 1980. A purchase agreement between Mr. Wong and the Picks was executed May 19, 1980, and the Act of Sale was passed on August 1, 1980 for $365,000.00.
It is well settled in our law that a relator is entitled to a commission, even though the sale is consummated after termination of the agency contract, if the relator was the procuring cause of the sale. Jackson v. Free, 442 So.2d 1346 (La.App. 3rd Cir.1983).
"`Procuring cause' refers to the efforts of a broker in introducing, producing, finding, or interesting a purchaser, and means that negotiations which eventually lead to a sale must be the result of some active effort of the broker. (citations omitted)
The term `procuring cause' is defined in the following language from 12 CJS Brokers Section 91, page 208.... `As used in that branch of the law relating to brokers' commissions, the terms `procuring cause', `efficient cause', and `proximate cause' have substantially if not quite, the same meaning and are often used interchangeably; they refer to a cause originating or setting in motion a series of events which without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principals property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing and able to buy on the principal's terms.'" at p. 1349.

Our review of the record convinces us that Miller, by his own actions and through his association with Franklin and Wolf was certainly a procuring cause of the sale. Even though we hold that Franklin and Wolf are not entitled to collect a commission directly from Pick, clearly their actions in association with Miller cannot be discounted in determining the procuring cause issue. A broker cannot be penalized thru forfeiture of his commission by engaging the assistance of competent co-brokers to aid in selling a given property. Their efforts are certainly attributable to Miller, and hence we agree with the trial court's conclusion that the 6% commission is due. For the reasons assigned herein, however, it is only due to plaintiff, Fred R. Miller.
The costs of this appeal are to be borne equally by Franklin and Wolf, and Mrs. Pick.
REVERSED IN PART, AFFIRMED IN PART.
NOTES
[1] This type of listing is commonly known as an exclusive or one purchaser listing.
[2] Lots 31 and 32 were both owned by Mrs. Pick and her late husband, Tilden Pick. Lot 32 was a vacant lot adjacent to Lot 31 which was located near a restaurant owned by the Picks called the Red Caboose.