SCHOTT, Judge.
Defendant, Emily P. Fritchue, has appealed from a judgment in favor of plaintiffs, Mr. and Mrs. James A. Salvant, for $4400 plus attorney’s fees based upon defendant’s breach of contract to purchase real estate from plaintiffs. The issue is plaintiffs’ entitlement to a judgment for damages as a matter of law under the facts found by the trial judge.
On June 8, 1977, defendant signed an offer to purchase plaintiffs’ property for $44,000. The offer which was obtained by real estate agent Helen Schmidt contained the following pertinent provisions:
“Upon acceptance of this offer, vendor and purchaser shall be bound by all its *753 terms and conditions and purchaser becomes obligated to deposit with seller’s agent immediately 10% of the purchase price, $4,400.00, amounting to $1,000.00 cash & $3,400.00 by demand note, and failure to do so shall not void this agreement but shall be considered as a breach thereof and seller shall have the right, at his option, to demand liquidated damages equal to the amount of the deposit or specific performance and purchaser shall, in either event, be liable for agent’s commission, attorney’s fees and costs.” ******
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.”
******
“This offer remains binding and irrevocable through Thursday, June 9, 1977.”
On the evening of June 8 when the agent presented the offer to plaintiffs they immediately accepted it.
Mrs. Schmidt testified that when she notified defendant of plaintiffs’ acceptance and requested the deposit defendant informed her that she changed her mind about buying the property and was looking for another house. According to defendant, Mrs. Schmidt took the offer with the understanding that it would not be submitted to plaintiffs since she (defendant) was considering the purchase of another house; and while she (defendant) was talking to another real estate agent about the purchase of the second house later that afternoon she called Mrs. Schmidt and was reassured that she was free to purchase the other house and that she (Mrs. Schmidt) would simply tear up the offer to purchase plaintiffs’ house. This conflict was specifically resolved by the trial judge in favor of Mrs. Schmidt as follows:
“This Court believes the testimony of Helen Schmidt that on the evening of June 8, 1977 she phoned defendant Emily P. Fritchue and advised her that her offer to purchase was accepted by the Salvants, plaintiffs herein, and thereupon demanded the stipulated deposit pursuant to the terms of the agreement.
In this telephone conversation, defendant Emily P. Fritchue responded she did not consider the agreement a binding agreement and she was withdrawing her offer and had no intention of buying the Trafalgar Street property. Several days later defendant Emily P. Fritchue entered into an agreement to buy another residence.”
Plaintiff, Mr. Salvant, gave the following testimony in reply to the question as to what happened after Mrs. Schmidt was informed by defendant that she would not make the deposit:
“I asked Helen — I said, ‘Now, what do we do?’ She said, ‘I don’t know. I’ve never had this happen before.’ And she said, ‘I’ll have to talk to Mr. Newell about it.’ And I don’t know for sure if Helen called me back that night or if it was the next day, but she said she was going to call Mrs. Fritchue and tell her that we would sue her if she did not, you know, live up to the bargain. And we left it in their hands to decide what would happen. You know, to negotiate it and see what would happen, and then the whole thing just fell through.”
Nonetheless, no further contact was made with defendant until on November 4 this suit was filed. Immediately after the telephone conversation plaintiffs authorized Mrs. Schmidt to continue in her efforts to sell the property. They accepted another offer on July 30 which was subsequently revised and resubmitted on August 12.
On the basis of these facts, the trial court reached the following conclusions:
“A putting in default under these facts would have been vain and useless as defendant Fritchue acknowledgedly was in the market solely to purchase a residence; this she did when several days after her repudiation of her agreement to purchase Trafalgar Street she entered into another agreement to buy a residence elsewhere. A putting into default was therefore un *754 necessary as a condition precedent to a suit for liquidated damages, which plaintiffs have opted to pursue under the remedies afforded by the agreement (line 31 which defendant Emily F. Fritchue breached.”
We do not agree with the trial judge that these circumstances as a matter of law obviated the necessity for any further action on plaintiffs’ part to put defendant in default.
The trial court relied principally on Lawton v. Louisiana Pacific Corporation, 344 So.2d 1129 (La.App. 3rd Cir. 1977) for the general proposition that anticipatory breach of contract is actionable in Louisiana and a placing in default is unnecessary where the circumstances indicate that such would be a vain and useless gesture on the part of the obligee. However, the case is distinguishable in that plaintiff wrote a letter to defendant demanding performance and defendant replied in a letter stating that it did not consider the contract valid. Furthermore, in the instant case the contract sued on contains language which obliged plaintiffs to place defendant in default:
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited without formality beyond tender of title to purchaser; or the seller may demand specific performance.” (Emphasis supplied)
In Becker v. Johnson, 350 So.2d 1259 (La. App. 4th Cir. 1977) the following was said:
“Plaintiffs nevertheless neither pleaded nor proved the putting in default required both by general law, C.C. 1933, and (as to sellers’ right) the agreement itself. (Under the agreement the seller may declare the deposit forfeited ‘without formality beyond tender of title to purchase.’ [This] tender is a prerequisite even if — as the evidence may suggest— the purchaser gave some indefinite verbal indication he did not want to purchase. Schuler v. A. K. Roy, Inc., La.App.Orl. 1953, 65 So.2d 333.) Accordingly plaintiff sellers are not entitled to declare the deposit forfeited.”
In Heatherly v. Rosenberg, 372 So.2d 766 (La.App. 4th Cir. 1979) it was held that a letter by plaintiff’s attorney to defendants advising them that the act of sale would be passed before the deadline was sufficient to constitute a tender of title under LSA-C.C. Art. 1911(2) since the letter was a “demand in writing” as required by the article.
In Kraft v. Baker, 377 So.2d 871 (La.App. 4th Cir. 1979) the court made the following pertinent observation:
“The apparent purpose for the contractual requirement of tender of title by the seller is to provide the buyer with an explicit opportunity to comply with his contractual obligations or to declare expressly or implicitly his refusal to do so, for whatever reasons. By providing notice of a definite and reasonable time and place for the sale and by presenting himself at that time and place (with his wife available and the formal act also available within a matter of minutes), the seller has fulfilled the purpose and the spirit of the contractual requirement.”
We have thus concluded that defendant’s verbal statement to Mrs. Schmidt that she would not make the deposit and buy the property did not dispense plaintiffs from taking some action by way of tender of title or at least a written demand before causing defendant to forfeit her deposit.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendant, Emily P. Frit-chue, and against plaintiffs, Katherine F. Salvant and James Salvant, dismissing their suit at their cost.
REVERSED AND RENDERED.