367 So.2d 127 (1979)
Delmont O. DAPREMONT, Jr., et al.
v.
Jacqueline CROSSLEY.
No. 9506.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1979.
Rehearing Denied February 15, 1979.
Writ Refused April 9, 1979.
*128 John S. Keller, New Orleans, for plaintiffs-appellants.
Fine & Waltzer, Michael G. Bagneris, Joseph I. Giarrusso, Jr., New Orleans, for defendant-appellee.
Morphy, Holbrook & Faulkner, Steven K. Faulkner, Jr., Metairie, for intervenor-appellant, Bertucci & Associates, Inc.
Before LEMMON, STOULIG and SCHOTT, JJ.
LEMMON, Judge.
This is an action to recover damages for breach of a contract to buy and sell immovable property, based on defendant-buyer's alleged failure to pay the required deposit within a reasonable time and failure to apply timely for mortgage financing. Plaintiffs-sellers have appealed from a judgment dismissing their suit after a trial on the merits.
Facts
On October 10, 1976 defendant signed an offer to purchase the property for $42,500.00, with a $20,000.00 down payment and the "balance by homestead loan". The offer also contained the following provisions:
"This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $22,500 by a mortgage loan or loans at a rate of interest not to exceed current % per annum, interest and principal payable on or before _________years in equal (monthly) X (quarterly) _____ (semi-annual) ______ (annual) ______ installments.
"Should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from acceptance hereof, this contract shall then be null and void and the agent is hereby authorized to return the purchaser's deposit in full. Commitment by lender to make loan, subject to approval of title, shall constitute obtaining of loan.
* * * * * *
"Upon acceptance of this offer, vendor and purchaser shall be bound by all its terms and conditions and purchaser becomes obligated to deposit with seller's agent immediately 10% of the purchase price amounting to $500 cash & promissory note of $3,750, and failure to do so shall not void this agreement but shall be considered as a breach thereof and seller shall have the right, at his option, to demand liquidated damages equal to the amount of the deposit or specific performance, and purchaser shall, in either event, be liable for agent's commission, attorney's fees and costs.
* * * * * *
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser, or the seller may demand specific performance".
The offer was accepted on October 11, 1976. The following day the agent requested the deposit, but defendant did not furnish it immediately. Moreover, defendant did not apply for a mortgage loan until November 11 (the 31st day after acceptance of the offer), and the application was rejected the same day. The contract deadline for passing the act of sale (November 24) passed without plaintiffs' putting defendant in default or tendering title to her.
On December 9, 1976 plaintiffs filed this suit to recover liquidated damages in the amount of $4,250.00.
At trial defendant testified: Her husband had died, and she desired to purchase a home for herself and her minor children with the forthcoming proceeds from settlement of a claim related to his death. She inspected and wanted to buy plaintiff's house, but didn't want to be obligated until *129 she received the settlement funds, and she signed the contract only because the agent told her the contract was a meaningless formality which would not bind her. Two days later the agent notified her the offer had been accepted and requested the deposit, but she didn't have any money at the time. After several more requests by the agent she received an October 27 letter from plaintiffs' attorney, stating that her failure to furnish the deposit constituted a breach of the contract and demanding payment. She consulted an attorney and gave him a $500.00 check dated November 5, the death claim settlement in the amount of $70,000.00 having been completed.
A subsequent letter from defendant's attorney to plaintiffs' attorney referred to a November 5 conversation between the two and indicated defendant's willingness to tender the cash portion of the deposit and to sign a promissory note for the balance, when the note was provided by the agent. No party saw fit to present other evidence about the promissory note.
The agent testified: On October 10 he received two offers on the subject property. Defendant's offer, based on homestead financing, was accepted over the other offer, based on F.H.A. financing, because homestead financing was quicker and offered greater net proceeds to the seller. He thought that homestead financing would be approved, although defendant's only income was social security benefits, because of the substantial down payment. When he notified defendant that the offer had been accepted, she stated she would prepare a check for the deposit on the following day, but when he called to pick up the check, she refused to pay the deposit, stating that her brother had told her she could get F.H.A. financing with a smaller down payment. At no time had he told defendant the contract was not binding on her, although he did explain at the time the offer was executed that the sellers had the option of accepting either offer and that defendant's offer would not become a binding contract unless the sellers accepted that offer.
Breach of Obligation to Apply for Mortgage Loan
On appeal plaintiffs initially argue defendant breached the contract by failing to apply for a mortgage loan until after the 30-day period had expired.
The contract was one subject to a suspensive condition, and defendant had the implied obligation to make a good faith effort to obtain mortgage financing and thereby fulfill the condition. Groghan v. Billingsley, 313 So.2d 255 (La.App. 4th Cir. 1975). Even when the evidence most favorable to the prevailing party is accepted, defendant did not use reasonable diligence in applying for mortgage financing. However, the penalty imposed on a buyer who does not make a good faith effort to obtain a mortgage loan necessary to fulfill a condition in a real estate sales contract is that the condition which was not fulfilled because of the buyer's fault is deemed waived by the buyer, and the condition is considered as fulfilled. C.C. art. 2040; Groghan v. Billingsley, above.
Therefore, while defendant cannot avail herself of the condition in order to avoid her obligations under the contract, plaintiffs are not entitled to damages merely because defendant did not make a good faith effort to obtain a mortgage loan.
Breach of Obligation to Pay Deposit
By the terms of the contract defendant was obliged to pay the deposit immediately upon acceptance by plaintiffs, and the evidence established she failed to do so. Plaintiffs accordingly contend defendant breached the contract and was liable for liquidated damages, irrespective of the fact that plaintiffs did not tender title prior to the contract date for passing the act of sale.
It is first necessary to examine the basic concept of the necessity of putting a party to a real estate contract in default before the contract date for passage of the act of sale. The leading case is Di Cristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949), in which the stipulated date passed without action by either party. When the buyer *130 sued for specific performance, the court reasoned, in effect, that the time for passing the sale was of the essence, and the court held that since the buyer was in default by not taking title or offering performance prior to the stipulated date, he was prohibited by C.C. art. 1913 from subsequently placing the seller in default.[1]
The Di Cristina decision was criticized on the basis that time is not necessarily of the essence in real estate sales contracts, and that, even if time were of the essence, the court nevertheless has discretionary authority under C.C. art. 2047 to allow an additional delay. See, for example, Work of the Louisiana Supreme Court for the 1954-1955 Term, 16 La.L.Rev. 211, 244 (1956);[2] Litvinoff, 7 Louisiana Civil Law TreatiseObligations, Book 2, § 250 (1975). Nevertheless, the decision has been followed consistently, even when it is evident that time is not of the essence in the particular contract.[3] Furthermore, as appears from subsequent appellate opinions, form contracts used by real estate brokers have been modified over the years to reflect court decisions, and the provisions at issue in this case are worded differently than the provisions at issue in earlier cases.
In the present case the contract required defendant-buyer to post the deposit immediately upon the sellers' acceptance of her offer, but the contract did not dispense with the necessity of putting her into default for failure to post the deposit timely. The sellers' notary, by letter on October 27, did put defendant in default, in effect notifying her that the promised performance was expected now and that any delay was significant. See Litvinoff, above, § 175. Shortly after receipt of the letter defendant gave her attorney a check for the cash deposit and expressed her willingness to sign a note for the balance, in accordance with the terms of the contract.
However, the seller did not tender title before the time specified in the contract.[4] Since the buyer, although tardy in payment, had posted the deposit and was in a position to perform (and indeed may have decided to perform if the seller had tendered title), we cannot say that the seller's tender of title would have been a vain and useless thing and therefore unnecessary. Furthermore, it is evident from the facts that time was of the essence in this case, since both parties knew that there were two pending offers and that defendant's offer was accepted because of the shorter period of time within which the sale was to be passed.[5]
*131 Inasmuch as plaintiffs did not tender title before the date stipulated in the contract, they are not entitled to claim liquidated damages based on any breach by defendant.
Agent's Claim for Commission
Even though the offer was accepted and the condition as to mortgage financing was considered as fulfilled, the agent is not entitled to a commission without regard to subsequent events. Becker v. Johnson, above. To recover a commission from the buyer (who was the only party at which the intervention was directed) on the contract to purchase, the broker must show either that contract was breached because of the buyer's fault or that the buyer agreed with the seller to rescind the contract. There was no such proof in this case.
The judgment is affirmed.
AFFIRMED.
SCHOTT, J., concurs and assigns reasons.
SCHOTT, Judge, concurring.
The purchaser, defendant in this case, is charged with two breaches of her contract to purchase the property. Under the facts of the case plaintiffs are not entitled to claim liquidated damages.
Under the sequence of events which was dictated by the agreement, once defendant's offer to purchase the property was accepted by plaintiffs she became obligated to make her deposit "immediately." When she failed to do so plaintiffs had the option to demand liquidated damages. The record shows conclusively that plaintiffs did not exercise this option but instead proceeded on the theory that the property would be sold irrespective of defendant's failure to make the deposit.
At this point defendant was still bound by her agreement to make a good faith effort to make a mortgage loan in accordance with the agreement, and her failure to comply with the agreement in the time specified authorized plaintiffs to sue for the deposit or demand specific performance, but in either case plaintiffs were required to tender title to defendant. Having failed to make a tender plaintiffs forfeited their right to sue for the deposit or to demand specific performance. Hence the suit was properly dismissed.
I agree with the majority reasoning that the agent is precluded from recovering commission pursuant to Becker v. Johnson, 350 So.2d 1259 (La.App. 4th Cir. 1977).
NOTES
[1] C.C. art. 1913 provides:

"In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default."
The court, apparently preoccupied with the issue of the validity of a verbal extension of time, did not discuss the court's discretionary authority to grant a further delay to the party in default, although that party was no longer entitled of right to tender performance. C.C. art. 2047; Southport Mill, Ltd. v. Ansley, 160 La. 131, 106 So. 720 (1925); Work of the Louisiana Supreme Court for the 1949-1950 Term, 11 La.L.Rev. 141, 166 (1951).
[2] The cited comment by Professor J. Denson Smith also notes that putting in default, if necessary at all, is only necessary when delay damages are claimed.
[3] In Shell Oil Co. v. Hogan, 228 La. 37, 81 So.2d 761 (1955) the contract provided that the sale was to be passed "on March 4, 1954, or on such other date as might be mutually agreed upon by the parties". The court held that the buyer, who did not offer performance before March 4, was not entitled to specific performance.
[4] The contract, as to the seller's right to declare the deposit forfeited if "the purchaser fails to comply with this agreement", dispensed with the necessity of any formality beyond tender of title to the purchaser. Nevertheless, tender of title is a prerequisite to forfeiture of the deposit, even if the purchaser has given some indication he no longer wanted to purchase. Becker v. Johnson, 350 So.2d 1259 (La.App. 4th Cir. 1977).
[5] See Lamar v. Young, 211 La. 837, 30 So.2d 853 (1947), in which the court found time was of the essence because it was necessary for tax purposes to complete the sale within the calendar year.