417 So.2d 24 (1982)
Mrs. Claire Meagher, Wife of/and Oliver Jos. YOUNG
v.
Terry KOEHL, Sr., et al.
No. 14774.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Richard K. Simoneaux, New Orleans, for plaintiff, appellee.
Stephen A Fritch, Metairie, for defendant, appellee Stan Weber & Assoc.
Randolph C. Slone, Slidell, for defendant, appellant Terry Koehl, Sr., et al.
Before ELLIS, PONDER and SAVOIE, JJ.
SAVOIE, Judge.
On March 1, 1979, appellants, Terry Koehl, Sr. and Terry Koehl, Jr., entered into a contract with appellees, Mrs. Claire Meagher and Oliver Joseph Young, to purchase property in Lindberg Glen Subdivision in St. Tammany Parish. They agreed that the purchase price was the sum of $75,000.00 on terms of $18,750.00 cash and *25 the balance to be obtained by a conventional loan. The said contract was conditioned upon the ability of the purchasers to borrow upon the property as security the sum of $56,250.00 by a mortgage loan or loans not to exceed twelve per cent (12%) plus two (2) discount points. The contract was prepared by sellers' attorney, and further stipulated:
"It is distinctly understood that this agreement is entered into by the parties hereto individually, however, the purchaser shall have the privilege of applying for the requested loan in the name of Teck-Service, Inc., which loan shall be guaranteed, warranted and endorsed by the purchaser individually if requested by the lending institution."
The contract was the result of an offer to sell made through the office of Stan Weber and Associates, Inc. Under this contract, the purchasers were obligated to make a good faith application for the required loan.
During the month of March, 1979, Terry Koehl, Sr. and Terry Koehl, Jr. met with Sharon Core, a loan officer with South Savings and Loan, for the purpose of obtaining the financing called for in the purchase agreement. The Koehls were advised that a loan would not be made on commercial property to individuals but that a loan was possible to a corporation. Sharon Core testified that the reason for this was that the usury statute in effect in Louisiana at that time forbade loans to individuals at more than ten per cent interest, but did not control the rate charged to corporate borrowers. A preliminary application was made with South Savings and Loan on March 7, 1979. The executive committee of South Savings and Loan met and voted.
"... to consider a commercial loan to Terry Koehl (Teck Service Inc.) at an interest rate of 12% plus 2 discount points provided that all of the underwriting requirements of the Association are met."
On Friday, April 6, 1979, Terry Koehl, Sr. lost his job of twenty-four years. Upon returning to Slidell the following Monday, he contacted his real estate agent and the attorney for the Youngs and advised them of that fact and requested that he be released from the contract. He allegedly, also called Sharon Core at South Savings and Loan and advised her of the situation.
Terry Koehl, Sr. made an additional attempt to secure monies to complete the purchase by contacting personal friends, but they were not able to assist him.
The sale was not consummated, and on October 11, 1979, Mrs. Claire Meagher and Oliver Joseph Young filed suit against the Koehls.
The main demand before the trial court involved a breach of an agreement to purchase involving appellants as prospective purchasers and plaintiff-appellees as prospective sellers. Plaintiff-appellees further joined Stan Weber and Associates, Inc. as defendants, due to Weber's holding of the deposit, one-half (½) of which was reserved specifically to the seller in the event of forfeiture. Stan Weber and Associates, Inc. answered and filed a Third Party Demand, seeking its full commission, reasonable attorney's fees and costs from the breaching purchasers.
The trial court awarded judgment to Meagher and Young against the Koehls on March 17, 1981, for damages equal to the deposit ($7,500.00), reasonable attorney's fees and costs, and also against the defendant, Stan Weber and Associates, Inc., for one-half (½) of the actual cash deposit, which would presumably serve as an off-set to the damages already awarded. In addition, third party plaintiff, Stan Weber and Associates, Inc., was awarded its full ten (10%) per cent commission, reasonable attorney's fees and costs.
Appellants appeal on the basis that they did not breach the agreement to purchase, and thus are not responsible for either appellees' liquidated damages or third party plaintiff's commissions. Due to this shared interest in upholding the trial court's decision in full, Stan Weber and Associates, Inc. as third party plaintiff-appellee, joined in this appeal brief with plaintiff-appellees, and both shall hereinafter be referred to as simply "appellees".
*26 The trial judge stated his reasons for judgment from the bench immediately on the close of evidence. He found that Koehl,
"... signed individually a purchase agreement agreeing to purchase a certain piece of property for so much cash and a balance by conventional loan at twelve per cent plus two discount points. Then, after it says, `See reverse'. Then it goes on giving him the right and the privilege of applying for the requested loan in the name of a corporation which loan shall be guaranteed, warranted and endorsed by the purchaser individually if requested by the lending institution. The evidence does not show that the purchaser proceeded with the loan application. The evidence further shows that the institution would have lent the money at twelve per cent to Mr. Koehl and his corporation which he had the right to do. If he had made application and they had rejected it then we might have had a null and void contract. We do not have that situation here. The Court will grant a judgment to plaintiff in the amount sued for and to the third party plaintiff." Rec. at pp. 131-132.
The trial judge was clearly wrong in holding that Koehl was contractually obligated to apply for a loan through his corporation. The plain language of the contractual provision noted by the judge expressly limits its binding effect to Koehl, individually, and grants him the privilege of applying for a loan through his corporation. There is no such thing as a mandatory privilege. He was not bound to make his corporation a party to the loan. The use of the word privilege precludes any obligation.[1]
What, then, were the obligations of Koehl under the contract which he signed? The answer is that he was bound to make a good faith effort to obtain a personal loan on the terms contractually stipulated.
Did he do so? We find that he did. Though he never completed a formal application to South Savings and Loan, Inc., the loan officer made it abundantly clear that the organization would not even consider a loan to him personally, because the application of the usury prohibition would make such a loan unprofitable. Considering the reasons given by South Savings and Loan, Inc. for rejecting his application for a loan, we cannot say that he had reasonable grounds to believe that he could obtain a personal loan from some other similar institution. Woods v. Austin, 347 So.2d 897 (La.App. 3rd Cir. 1977).
Additionally, we note that there is nothing in the record to indicate that plaintiffs ever made a formal tender of title to Mr. Koehl. The relevant provision of the contract states:
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance."
Tender of title is necessary, under the above clause, even though the purchaser has verbally communicated his unwillingness or inability to go through with the contract. Salvant v. Fritchue, 379 So.2d 752 (La.App. 4th Cir. 1979) writ refused 381 So.2d 509 (La.1980).
In the Salvant case, the court found the failure to tender title was fatal to the plaintiff's case. The same is true in this matter.
The judgment below is reversed.
Costs on appeal will be assessed to the appellees, one-half to the sellers, Meagher and Young, and one-half to the realtor, Stan Weber & Associates, Inc.
REVERSED.
NOTES
[1] Black's Law Dictionary defines "privilege" as follows: "Privilege: A particular and peculiar benefit or advantage enjoyed by a person ... exemption from some burden ... That which releases one from the performance of a duty or obligation...."