SCHOTT, Judge.
This case arose out of a proposed sale of a grocery business from Wilfred Maise, defendant, to Latif Salem, plaintiff. Subsequent to the signing of an agreement to purchase and sell between these parties, plaintiffs Mr. and Mrs. Husni Farhoud came forward as Salem’s undisclosed principals. They arranged with defendant to take immediate possession of the store pri- or to the passage of an act of sale and paid him $18,000 representing the balance of the cash portion of the purchase price. However, the sale was never passed, and Maise repossessed the property. The Farhouds sued for $20,000 consisting of the above mentioned $18,000 and $2,000 deposited for them by Salem when he signed the agreement to purchase and sell; and Salem sued for $895 for a check given by Maise to the Farhouds and cashed for them by Salem. Maise reconvened for the real estate commission he incurred and for loss of business profits and inventory while the Far-houds were in possession. From a judgment in favor of plaintiffs on the main demand for $20,895 and dismissing Maise’s reconventional demand he has appealed. The first issue is whether Maise is entitled to a forfeiture of the deposit made by Salem in connection with the agreement to purchase and sell. The other issues involve the facts concerning Maise’s reconventional demand and some evidentiary rulings made by the trial court in that connection.
The agreement to purchase and sell was signed by Salem and Maise on July 9, 1976. It’s object was immovable property at 401 Adams Street in New Orleans with the stock and fixtures of “Bill’s Grocery.” The price was $42,000 consisting of $21,000 cash and the balance of $21,000 to be a mortgage note payable in monthly installments of $266. The sale was “to be passed before Vendor/Agents, Notary, at any time after July 25, 1976, and no later than August 25, 1976.” A deposit of $4,000 was called for, but Salem deposited $2,000 which was accepted by the real estate agent, John A. Stassi. The agreement also provided:
“In the event the purchaser fails to comply with this agreement within the time specified the seller shall have the right to declare the deposit ipso facto, forfeited, without formality beyond tender of title to purchasér, or the seller may demand specific performance.
In the event the deposit is forfeited, the commission shall be paid out of this deposit, reserving to the seller the right to proceed against the purchaser for the recovery of the amount of the commission.
If this offer is accepted, seller agrees to pay the agent’s commission of 6% which commission is earned by the agent when this agreement is signed by both parties .... ”
Shortly after the agreement was signed the Farhouds who were Salem’s parents-in-law came on the scene and began to negotiate with Maise for early occupancy of the *124 building and business. It was now understood that Salem had been acting in their behalf and they were the ones who would take title and operate the business. On July 13, 1976, the Farhouds gave Maise a cashier’s check for $18,000 and two notes signed by Husni Farhoud, one for $21,000 payable on demand, and the other for $1,000 payable in sixty days. The Far-houds then took possession although no act of sale was passed and no other document was ever signed by the Farhouds.
On August 2, 1976, the real estate agent notified the parties that the act of sale was to be passed at 2 PM on August 10 in the offices of John A. Stassi 2nd, and Maise presented himself there with the two notes which were paraphed “ne varietur” for identification with an act of credit sale prepared for the signature of Maise and Husni Farhoud, as purchaser. There is a conflict of testimony among the witnesses as to why the Farhouds did not show up at the sale, but at this point in time there was no indication that they did not intend to go through with the transaction. It is clear that the Farhouds, who were Palestinian immigrants unable to read or write English, were laboring under some misconceptions as to the status of the affair. They seemed to think that the sale had been completed and did not understand the necessity of confecting a formal act of sale.
In any event, whatever rights Maise had to the deposit of $2,000 had to flow from the agreement to purchase and sell alone. Under its terms the purchaser had until August 25 to take title and forfeiture of the deposit was conditioned upon the seller tendering the title to the purchaser. Maise contends that the Farhouds demonstrated a clear intention not to take title so that a formal placing in default would have been a useless gesture as in Morrison v. Fineran, 397 So.2d 838 (La. App. 4th Cir.1981). But the record does not show that'the Farhouds had given any indication before August 25 that they would not take title. On the contrary they continued to operate the business during this period. In any event, the only purchaser involved at this time was Latif Salem. The Farhouds had never signed an agreement to purchase this property. Thus, it was incumbent upon Maise to tender title to Salem in order to forfeit Salem’s deposit. Salvant v. Fritchue, 379 So.2d 752 (La.App. 4th Cir.1980); Heatherley v. Rosenberg, 372 So.2d 766 (La.App. 4th Cir.1979). All of Maise’s arguments with regard to the $2,000 deposit revolve around the Farhouds’ conduct and the legal effect of that conduct on the agreement he had with Salem. Contracts involving real estate must be in writing, C.C. Arts. 2275, 2440. In the absence of a written document connecting the Farhouds with this real estate transaction their conduct would not provide a basis for Maise’s right to forfeit Salem’s deposit.
Next, we consider the trial court’s judgment in plaintiff’s favor for the $18,-000 paid to Maise when they took possession. At the time this was paid both parties were under the impression that a sale would take place and they considered the payment as an early payment of the price in advance of the sale in exchange for early occupancy. When the agreement to purchase and sell expired with neither party taking the necessary steps to enforce it all parties were entitled to be restored to their original positions. Like Salem who was entitled to his deposit, Maise was entitled to repossess the premises, and the Far-houds were entitled to their $18,000.
Finally, the record supports the trial court’s award of $895 on Salem’s principal demand. The Farhouds testified that Maise accommodated them on August 11 by purchasing from them this amount of food stamps because they were not yet licensed to deal in food stamps. Salem cashed this check for the Farhouds and deposited it in his account. The check was returned because of an incomplete signature. Maise claimed that he was in the process of writing the check when the Far-houd’s insisted on cash for the food stamps, and he gave them cash. He speculated that the Farhouds scooped up his check with the cash. The trial judge apparently disbelieved Maise on this point and no basis exists for this court to substitute our *125 own credibility call for the trial court’s. We have thus concluded that the judgment on the principal demand is correct and turn to Maise’s reconventional demand.
By his reconventional demand Maise sought recovery for the real estate commission he paid Stassi, loss of profits for the two months the Farhouds had possession of the store, and loss of inventory and stock while they had possession. As to the commission, it follows from our previous discussion that Salem was the only potential obligor for the commission other than Maise since the Farhouds were not parties to the agreement. Under the plain provisions of the agreement Maise owed the commission and his failure to put Salem in default precludes his collection of it from Salem.
Whether entitled as a matter of law or not to recover for lost inventory Maise failed to carry his burden of proof to prove such a loss. He attempted to introduce inventories taken by an outside company, Inventories Unlimited, Incorporated, on July 3 and September 10, 1976, to show that the inventory had dwindled from $17,-000 to $9,000 during this period. In this court Maise argues that the trial court erred in refusing to admit this evidence because it was admissible under the business records exception to the hearsay rule. His position is unsound because he failed to show that the person who took the inventory was unavailable and that the information was a permanent record made in the ordinary course of his business. Newspaper Production Co. v. Perry, 404 So.2d 1331 (La.App. 2nd Cir.1981). Here the preparer was an independent company and there was no evidence that its services were routinely used by Maise in the ordinary course of his business. Furthermore, the figures are suspect on the basis of Maise’s testimony on cross examination. The trial court apparently disbelieved Maise’s testimony that the stock was depleted and, instead, believed the Farhouds who testified that there was more stock in the store when they left than when they took possession. Again, this credibility evaluation by the trial court will not be disturbed on appeal.
Next, we consider Maise’s claim for lost profits. Although he testified that he made $20,000 profit from the store in 1975 his income tax return reported a profit of only $6471. Tax returns for the previous four years reflected losses. Here again the trial court apparently concluded that the business was a losing proposition, and the record supports this conclusion.
Finally, we see no merit to Maise’s argument that the trial court erred in refusing to admit in evidence Salem’s 1981 conviction in the federal court for food stamp fraud so as to warrant some corrective action by this court. Even assuming that this was admissible evidence for impeachment purposes Salem’s testimony in the case was not a crucial issue. His connection with the principal demand was based on the written agreement to purchase and sell and his legal right to recover the deposit flowed from that agreement and Maise’s failure to put him in default. His connection with the reconventional demand was peripheral and Maise’s failure to recover was the result of a resolution of conflicts in his testimony as opposed to the Farhouds, not Salem’s.
Accordingly, the judgment is affirmed.
AFFIRMED.