481 So.2d 655 (1985)
L.W. BROOKS, Jr., d/b/a Larry Brooks
v.
Randall A. SHIPP.
No. 84 CA 1148.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
*656 W. Arthur Abercrombie, Jr., Baton Rouge, for plaintiff-appellee L.W. Brooks, Jr.
Randall A. Shipp, in pro per.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
The trial court granted plaintiff-appellee, L.W. Brooks, Jr., d/b/a Larry Brooks (Brooks), a real estate broker, a commission in the amount of $3,480 and attorney's fees against defendant-appellant, Randall A. Shipp (Shipp), for his alleged breach of a real estate purchase agreement. The trial court found that Shipp breached his agreement to purchase and under the agreement became liable for Brooks' commission and attorney's fees. We affirm.

FACTS
On October 1, 1982, Brooks obtained a listing agreement for the sale of property that he and eight of his relatives (sellers) had acquired through a succession. On October 11, 1982, Shipp signed a purchase agreement to buy the property for $58,000. The sale was to be passed on December 1, 1982. Shipp issued a $1,000 check to Brooks as a deposit.
The purchase agreement was written on a standard form contract and provided initially that the sellers were to pay Brooks' commission. However, it contained this clause, "Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent's commission and all reasonable attorney's fees and costs incurred by the other party ... in enforcing their respective rights." The commission was the standard 6% of the purchase price or $3,480.
The purchase agreement also contained the following clause, "In the event the purchaser fails to comply with this agreement *657 within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or seller may demand specific performance."
As most of the sellers lived out of town and some out of state, it was decided that the simplest way to pass the sale would be to acquire written powers of attorney from each seller authorizing Brooks to complete the transaction. Shipp, who happened to be an attorney, volunteered to draw up these powers of attorney. However, Brooks never received them from Shipp[1] and eventually hired another attorney to prepare them.
On November 23, 1982, Brooks wrote a letter to Shipp informing him that not having received the powers of attorney from Shipp another attorney had prepared and mailed them to the sellers. Brooks wrote that he expected the powers to be back in time for December 1, but stated, "If by chance, we do not physically have the powers of attorney we will have the sale and escrow the funds, etc. until all of the powers of attorney have been received ... please let me know your plans for the sale." (Original Emphasis)
Brooks testified that during this period he made several attempts to contact Shipp concerning the sale but was unsuccessful. His calls were never returned. He further testified that having been unable to reach Shipp, on December 1 he went to Shipp's office with the act of sale and was informed Shipp was out of town. Later that afternoon he hand delivered a letter to Shipp's office reminding him that the sale was to be passed that day and requesting performance. Brooks never heard from Shipp. On December 23, 1982, he initiated this litigation. After judgment in favor of Brooks, Shipp filed this appeal. Brooks answered, seeking an increase in attorney's fees. Shipp alleges the following assignments of error on the part of the trial court:
1) By admitting evidence of a putting in default when the putting in default had never been pled and the evidence offered was not listed in the pretrial order;
2) By finding a putting in default was not legally required;
3) By failing to find a unilateral and active breach by appellee.

UNILATERAL BREACH BY BROOKS
Shipp argues that the letter of November 23rd constituted a prior unilateral, active breach by Brooks. In his brief to this court, Shipp contends the letter "arbitrarily and unilaterally stated that the sale would, nevertheless, take place without a tender of valid title and the appellant's funds would be required to be paid into escrow." We do not believe this letter was a unilateral, active breach on the seller's part. It discussed the possibility that the powers of attorney would not be in for the closing date of the sale, and suggested an alternative to not having the sale delayed. Had the powers of attorney not come in by December 1, then Shipp may have been justified in refusing to escrow the funds until they were received (as the sellers may have been in breach). However, the powers of attorney did arrive in time.
This letter was an attempt by Brooks to avoid a potential problem ostensibly caused by Shipp. It suggested a means to avoid any potential delay. Brooks did not state that the sale would definitely take place with the funds being escrowed regardless of whether the powers of attorney arrived in time. Therefore, he did not perform any act inconsistent with his obligations under the agreement. The powers of attorney did, in fact, arrive in time and there was no breach by Brooks.

APPELLANT'S BREACH AND "PUTTING IN DEFAULT"
We need not address Shipp's argument that the trial court should not have admitted the letter of December 1 and erred in finding it constituted a putting in default. We conclude that Shipp was properly *658 placed in default under the contract and the letter of December 1 was unnecessary for that purpose.
Shipp contends that the failure of the sellers to place him in default is a defense to Brooks' action against him. While the parties addressed the default issue, a proper characterization of the legal relation between the parties has never been made by them and is necessary to properly render a judgment in this case. Their legal relationship involves a stipulation pour autri, as the parties to the purchase agreement conferred a benefit on the real estate agent. The agent is thus a third party beneficiary to the stipulation pour autri. See Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983); Wagner & Truax Co. v. Barnett Enterprises, 447 So.2d 1255 (La.App. 4th Cir.1984).
The damage clause in the contract provides that if the purchaser breaches the contract he is obligated to pay the agent's commission plus costs and attorney's fees. This type of penal obligation in favor of a third person may be provided for in a stipulation pour autri, and when contained in a real estate purchase agreement, is legally enforceable. Touchdown Real Estate, Inc. v. Holton, 426 So.2d 701 (La.App. 1st Cir. 1982); Carl Heck Engineers, Inc. v. Haselden & Assoc. Inc., 316 So.2d 890 (La.App. 1st Cir.1975).
The promisor (Shipp) may raise against the beneficiary (Brooks) the defenses based on the contract that he may raise against the stipulator (sellers). See Union Bank of Louisiana v. Bowman, 9 La.Ann. 195 (1854). This jurisprudential rule has recently been codified in La.C.C. art. 1982.[2]
Shipp argues a putting in default by the sellers was a prerequisite under former La.C.C. art. 1933 and former La.C.C. art. 1912 for them to collect damages against him.[3] Shipp contends the sellers' failure to place him in default is a defense to an attempt by Brooks to collect damages. Shipp does not raise any other defense. Accordingly, if he was placed in default by the sellers, he is liable.
Under former La.C.C. art. 1911(1), one method of placing a party in default was to provide in the contract that a party is deemed in default upon his failure to comply with the terms of the contract. Investor Inns, Inc. v. Wallace, 408 So.2d 978 (La.App. 2d Cir.1981). Thus, the party is automatically placed in default by his breach. In the contract before us, the seller was given the right, upon breach, to obtain stipulated damages (forfeit the deposit) or seek specific performance "without formality beyond tender of title". Thus, for Shipp to be liable for damages, the sellers only had to tender title. Since no other "formality" was required, no further attempt at putting in default was necessary. See Young v. Koehl, 417 So.2d 24 (La.App. 1 Cir.1982); Salvant v. Fritchue, 379 So.2d 752 (La.App. 4th Cir.1979); Becker v. Johnson, 350 So.2d 1259 (La.App. 4th Cir.1977).
It was alleged in the petition and the record indicates that the sellers provided notice of a definite and reasonable time for the sale, presented themselves at the time and place and were ready and able to execute the sale. Therefore they tendered title. Kraft v. Baker, 377 So.2d 871 (La. App. 4th Cir.1979).
Shipp, having been placed in default by the terms of the contract, had no valid defense against the sellers, had they chosen to enforce their right to collect stipulated damages.[4] Shipp, having no valid defense against the sellers, has no defense *659 against Brooks enforcing his right to collect the stipulated damages that Shipp agreed to pay him.
We find no error in the lower court's judgment.

ATTORNEY'S FEE
Brooks has answered Shipp's appeal, seeking an additional sum to compensate his attorney for the prosecution of this appeal. We award plaintiff-appellee $750 for additional attorney fees incurred on appeal. See Metropolis, Inc. v. Hanson, 434 So.2d 1207 (La.App. 1 Cir.1983); Abshire v. W.D.L. Investments, Inc., 428 So.2d 1145 (La.App. 1 Cir.1983).

DECREE
Therefore, for the above reasons, the judgment of the trial court is amended to increase the award of attorney's fees from the sum of $900 to the sum of $1650. The judgment is otherwise affirmed. Appellant is to pay all costs.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The record does not reveal why Brooks never received the powers of attorney.
[2] La.C.C. art. 1982 was enacted by Acts 1984, No. 331, § 1, eff. Jan. 1, 1985, after these events occurred, but according to the comment did not change the law prior to Jan. 1, 1985, merely codified it.
[3] La.C.C. arts. 1911, 1912 and 1933 were amended and reenacted by Acts 1984, No. 331, § 1, eff. Jan. 1, 1985. They were the applicable law when these events occurred.
[4] The sellers apparently never negotiated the check they held for deposit although they were clearly entitled to.