496 So.2d 1211 (1986)
Dr. Kamalakant G. THALY, et ux.
v.
Robert NAMER.
No. 86-CA-227.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Rehearing Denied November 17, 1986.
*1212 Gene Friedman, New Orleans, for plaintiffs-appellees.
Leonard M. Berins, Metairie, for defendant-appellant.
Before BOWES, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a contract dispute relative to two agreements to purchase certain immovable property from Robert Namer (Namer), the seller, by Dr. Kamalakant G. Thaly and his wife, Lata K. Thaly (Thaly), the purchasers. The agreements to purchase were conditioned upon the ability of the purchasers to obtain a loan. The purchasers contend that they were unable to obtain the requisite loan in the time period provided for in the contract and accordingly filed suit for the return of deposits in the total amount of Six Thousand Dollars ($6,000.00).
After a trial on the merits, the trial judge rendered judgment in favor of the Thalys and against Namer for the amount of the deposits. The trial court also dismissed Namer's reconventional demand seeking specific performance of the agreements. Namer now appeals. We affirm.
The Thalys entered into two agreements with Namer. Both of these documents were dated November 6, 1983. They were signed on November 9, 1983. Each agreement provided that the Thalys would pay $330,000.00 for certain immovable property owned by Namer. The terms were that $33,000.00 would be given in cash with the balance by an adjustable rate mortgage payable over 30 years with the first year's interest not exceeding 11%. Each agreement also provided that:
"This sale is conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $297,000.00 by a mortgage loan or loans at a rate of interest not to exceed see above % per annum, interest and principal payable in equal ______________________________________________; (monthly) (quarterly) (semi-annual) (annual) installments, over a period of thirty years.
Should the loan stipulated above be unobtainable by the purchaser, or seller within 30 days from date of acceptance hereof, this contract shall then become null and void, and the purchaser's deposit in full shall be returned."
On May 1, 1984 the Thalys filed a "Petition for Refund of Deposit". They contend that on November 6, 1983 they entered into agreements with Namer to purchase two eight-plexes located in Metairie, Louisiana for the total price of $660,000.00. Both of these agreements were subject to the Thalys obtaining a loan in the amount of $297,000.00 for each property. They assert that a good faith application for the loan was made on November 16, 1983 with Fontainbleau Federal Savings and Loan Association.
A subsequent appraisal of $600,000.00 caused the lending institution to only agree to a loan of $540,000.00 on both pieces of property. Thus, the Thalys assert that they were unable to obtain the necessary loan of $594,000.00 on both properties. Accordingly, they seek a refund of their $6,000.00 deposit.
On September 7, 1984 Namer filed an answer and a reconventional demand in which he alleges that the Thalys did not make a good faith application for financing the properties. He also sued for specific performance as well as on the promissory notes also given as a deposit. Each note was for $30,000.00, dated November 9, 1983.
Appellant asserts the following errors:
1. That the trial court erred in finding that the Thalys had met their burden in proving that they did not have the ability to obtain the requisite financing, and of showing that the loans were unobtainable from any source, and
2. That the trial judge's conclusions of law are not supported by the evidence.
L.S.A.-C.C. Article 2021 (pre-1985) defines a suspensive condition as one in which "the obligation is not to take effect until *1213 the event happen[s]". The suspensive condition is one which depends on an uncertain event. L.S.A.-C.C. Article 2021 (pre-1985). If the obligation is conditioned upon an event which has not yet occurred, then "the obligation can not be executed till after the event." L.S.A.-C.C. Article 2043 (pre-1985).
In Woods v. Austin, 347 So.2d 897, 899 (La.App. 3rd Cir.1977) the court held that:
"[a] stipulation in a contract to sell, which makes the sale conditioned upon the purchaser's ability to obtain a stipulated loan to finance the purchase, is a contract subject to a suspensive condition. It imposes upon the purchaser the duty to make a good faith effort to obtain the loan. Whether he acted in good faith depends on the facts and circumstances in each case. If the purchaser, through no fault of his own, is unable to obtain the loan, he is released from his obligation to purchase and is entitled to the return of his deposit." [Citations omitted]. See also, Shepard v. Calloway, 441 So.2d 488 (La.App. 2nd Cir. 1983).
In the instant case, the suspensive condition was the "ability of the purchaser to borrow upon the property as security the sum of $297,000.00" for each of the two eight-plexes for a total of $594,000.00. Moreover, the agreements provided that the contracts would become null and void within 30 days from the date of acceptance should the loan be unobtainable by the purchaser or the seller.
The seminal issue in this case is whether the Thalys made a good faith effort to obtain the loan. Whether or not they did is based upon a factual determination by the trial court. Sims v. Ussery, 355 So.2d 633 (La.App. 4th Cir.1978).
The law imposes upon the purchaser the implied obligation to make a good faith effort to obtain the financing in order to fulfill the condition. Dapremont v. Crossley, 367 So.2d 127 (La.App. 4th Cir.1979) writ denied 369 So.2d 710 (La.1979). Should the purchaser not make the required good faith effort then the condition is deemed waived. Dapremont, supra. L.S.A.-C.C. Article 2040 (pre-1985).
The trial judge found that the Thalys acted in good faith. He noted that:
[t]hey've done all the things that they were supposed to do in order to secure this loan. They got an agent to act for them; they did all of the thingsthey went over immediately or shortly thereafter or within a reasonable period of time and made the application for the loan, gave the credit reference and all of the things that were necessary. Once they got the loan approved, they immediately contacted the agent or the agent immediately contacted the appraiser so that he could go out. They paid the appraiser the sum of $950.00 and I think they acted in good faith.
Moreover, he reasoned that:
[t]here is nothing that's been pointed out to me that would remotely suggest that the Thalys did anything which would have prevented the homestead from granting them the loan. They did everything they possibly could do and in the end, even though [sic] the expiration of this contract, this suspensive condition, they did nothing to interfere with that suspensive condition ... they did nothing which would have in any way prevented the loan from being made. They did everything they could. This was the ultimate decision of the homestead not to make the loan. Based upon the appraisal of the property, it was not the Thalys who did anything which brought about the appraisal in such a fashion as to reduce the value of the property so as to not let the homestead make the loan. They did everything. In fact they wanted the property it seems to me so much, that they continued even after the date because the appraisal came up sometime on December 9th and it wasn't completed until January 3rd and they were still in hopes of buying these two units ...
The record amply supports the factual determinations of the trial court. The Thalys did make a timely application to the *1214 homestead. Their agent, Dhume, testified that he accompanied Thaly (the husband) to the homestead. Hooper, the Vice-President, confirmed that a credit application had been taken on November 14, 1983 which was five days from the date the agreements were signed by the Thalys. Hooper further testified that he advised the Thalys to wait for loan approval before paying for an appraisal.
Hooper testified that on December 7, 1983 loan approval was obtained conditioned upon an appraisal and the assignment of life insurance. The Thalys, through their agent, contacted one of the appraisers given on a list to them by the homestead. Albert Hamauei, the appraiser, testified that on December 9, 1983 he was requested to do an appraisal. Hooper related that Hamauei telephoned him to give an appraisal value of $600,000.00. Hooper then informed Dhume and followed the conversation with a letter dated January 11, 1984 in which he advised the Thalys that the maximum the homestead could loan was 90% or $540,000.00.
Dhume testified that when he learned from Hooper that the lending institution would not loan the Thalys the requested loan amount, he contacted Namer to renegotiate the price. He further testified that Namer refused the lower offer and that Namer never approached them with a serious offer to finance it himself.
Namer also relies on another provision in the agreements to urge that the Thalys acted in bad faith. The provision states that "[s]hould the loan stipulated above be unobtainable by the purchaser, or seller within 30 days from date of acceptance hereof, this contract shall then become null and void, and the purchaser's deposit in full shall be returned."
Namer testified that he had made an offer to finance the loan himself and that the Thalys' refusal to allow Namer to finance the loan showed bad faith on their part. The trial judge viewed Namer's letter dated December 8, 1983 as an acknowledgement by Namer to the Thalys that his financial assistance was unnecessary. The record also supports the finding by the trial judge that no serious offer to finance was made by Namer.
John Spratt (Spratt) testified that he dealt with Namer in his capacity of Vice-President of First National Bank of Jefferson. He related that Namer had spoken to him about the possibility of financing a buyer, however, he was uncertain when the discussion occurred. He did testify, however, that no specific buyer was ever mentioned and neither was a loan package submitted. Thus, his testimony corroborates that of Dhume in that no serious offer to finance was made by Namer setting forth the terms of such an offer.
In Katz v. Chatelain, 321 So.2d 802 (La. App. 4th Cir.1975) our brothers in the Fourth Circuit held that a purchaser has no obligation to apply elsewhere while his loan is pending at one institution. Importantly, the Katz court also held that a purchaser is not obligated to accept a loan offered by the seller which is inconsistent with that contemplated in the agreement to purchase. See also Antonini v. Thrifty Nifty Homes, 76 So.2d 564 (Orl.App.1955).
In the instant case the agreements to purchase expired 30 days from November 9, 1983 or December 9, 1983. The loan was not approved due to a low appraisal, a factor beyond the control of the Thalys. Moreover, no serious offer of seller financing was presented to the Thalys. Thus, no waiver of the suspensive condition occurred since the Thalys acted in good faith. Consequently, the contract expired on December 9, 1983.
Finally, in order for a purchaser to forfeit the deposit two things must occur; namely, (1) that the purchaser not make a good faith effort to obtain financing and (2) that the seller make a tender of title. Kraft v. Baker, 377 So.2d 871 (La. App. 4th Cir.1979). Namer admitted that no date was ever set for the act of sale. Thus, there is no evidence that title was ever tendered to the Thalys. Therefore, even had the Thalys been in bad faith, Namer never tendered title to them. In *1215 Dennis Miller, Etc. v. Denney Miller, Jr., 379 So.2d 801, 804 (La.App. 4th Cir.1980), writ denied 383 So.2d 25 (La.1980) the court held that "even if [the purchaser] did not make a bona fide effort to obtain financing, the [seller's] failure to tender performance had the effect of negating the agreement once the time specified for execution expired."
In Brooks v. Shipp, 481 So.2d 655 (La. App. 1st Cir.1985) the court defined a tender of title as when the seller gives notice of a definite and reasonable time for the sale and goes to it on that date ready and willing to proceed. A formal tender is necessary even when the purchaser communicates his inability to go through with the sale. Young v. Koehl, 417 So.2d 24 (La.App. 1st Cir.1982). Thus, Namer could not declare that the Thalys forfeited their deposit without meeting the two-pronged test of showing bad faith on their part and also tendering title.
Accordingly, for the reasons set forth, the judgment in favor of the plaintiff/appellees is affirmed. Appellant is to pay costs.
AFFIRMED.