HAMITER, Justice.
 

 On August 30, 1943, R. M. Dees sold to plaintiff herein, Lenard I. Davis, a business known as Milady Cleaners and Laundry, located at 811 Traffic Street, Bossier City, Bossier Parish, and immediately thereafter the vendee commenced operating it.
 

 The written contract, evidencing the sale and bearing the mentioned date, described the property conveyed as “ * * . * including all equipment and apparatus pertaining to the said business, consisting of three auto trucks and all equipment located inside the above premises and all supplies on hand at the time of the transfer,
 
 good will, etc.
 
 * * * ”. The remainder of. the contractual provisions related to the payment of the consideration for the sale, the total of which was $25,000. They did not, however, shpw the separate or individual value of each asset transferred. (Italics ours.)
 

 
 *232
 
 A few weeks following the sale’s consummation R. M. Dees bought, in nearby Shreveport, a competitive business known as Military Laundry, and he operated it until his death in October, 1944. Thereafter the operations were continued, for some time by his widow, Mrs. Margie Sargent Dees.
 

 On December 13, 1944, Davis instituted this action against the widow, individually and as natural tutrix for her minor daughter Lela Ann Dees, seeking recovery for a debt allegedly owed by R. M. Dees. In his petition plaintiff alleges, with reference to such debt, that Dees violated the provisions of their contract of sale of August, . 1943, by engaging in a competitive business, contrary to their understanding and agreement, and further by destroying the good will of the Milady Cleaners and Laundry for which plaintiff paid the. sum of $15,000. The destruction of the good will, he shows, was occasioned by Dees’ enticing from the business establishment its employees, and also by securing, through active solicitation, its former customers, especially the several bombardment squadrons stationed at Barksdale Field in Bossier Parish. The prayer is for judgment of $15,000, allegedly the consideration paid for the destroyed good will and, alternatively, the damages sustained by the breach of contract.
 

 Defendant filed exceptions of no cause and no right of action and a plea of prescription of one year, all of which were referred to the merits. Answering, she denied generally the allegations of the petition.
 

 In dismissing the suit, the trial judge concluded that “plaintiff has failed to meet the burden that is on him to make out his case by a preponderance of the evidence.” From the judgment plaintiff appealed.
 

 During the trial of the case plaintiff offered testimony to show that when the sale was consummated Dees agreed orally, as alleged in the petition, that he “would not solicit any business from Barks-dale Field or residential customers or go into any competitive business with that sold.” This evidence, objected to by defense counsel, was clearly inadmissible, a conclusion that is now virtually conceded by counsel for plaintiff. No agreement or understanding of that nature is contained in the executed instrument (certainly the word “etc.” is insufficient to represent or signify it), and to admit the proof offered would be to permit the enlarging of the terms of a written contract in violation of Revised Civil Code Article 2276.
 

 Of course plaintiff did, under the terms of the written instrument, purchase the good will of the Milady Cleaners and Laundry. But, in the absence of an expressed stipulation to the contrary in the contract, the sale of the good will of the business did not preclude Dees from engaging in a similar undertaking in Bossier City, in Shreveport or elsewhere. Bergamini v. Bastian, 35 La.Ann. 60, 48 Am.
 
 *234
 
 Rep. 216; Nicholson Publishing Company v. E. S. Upton Printing Company, 152 La. 270, 93 So. 91.
 

 Plaintiff’s counsel theorize, however, that even though the vendor of the good will of a business has the right to establish a competing business (when he has made no contrary binding agreement), he can not actively solicit the customers of the old business or entice its employees. To support this theory they call attention to several decisions of courts of other states; they cite no cases in our jurisprudence, and we have found none.
 

 If it be assumed that the theory thus advanced is sound and should be recognized and followed in Louisiana (this we do not determine for it is unnecessary to do so), plaintiff is not entitled to recover herein for the reason, as the trial judge held, that no proof was made of Dees having actively solicited the old customers of the Milady Cleaners and Laundry or of his having enticed its employees. The only admissible testimony on this point was given by Mrs. Dees under cross examination. About the old customers, she testified:
 

 “Q. During his, Mr. Dees’, lifetime didn’t he, in the months of September, October and November of 1943, didn’t he go out to Barksdale Field and get that business? A. No. Prentice'Darnell did.
 

 “Q. They went out— A. They went out and got it.
 

 “Q. It came to your business in Shreveport the Military Laundry? A. Yes.
 

 “Q. They did get the Barksdale account away from Mr. Davis? A. Mr. Dees didn’t, Prentice Darnell.”
 

 From this bit of evidence it can not be determined whether Darnell (Dees’ agent) went to Barksdale Field of his own voli- _ tion, actively soliciting the business, or went there in response to a call from those having charge of sending out the garments for cleaning and laundering. With reference to the employees who left the old business and went to work for their former employer (Dees), the plaintiff made no attempt to show the cause of the transfer. It is just as fair to assume that they went of their own accord, because of better working conditions or higher wages, as it is to assume that Dees exercised unfair influence or means in securing their services. The positive testimony of Mrs. Dees was that they came to her husband “of their own will.” "
 

 The judgment is affirmed.