379 So.2d 801 (1980)
DENNIS MILLER PEST CONTROL, INC.
v.
DENNEY MILLER, JR. PEST CONTROLS, INC., and Dennis Miller, Jr.
No. 10345.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1980.
Rehearing Denied February 20, 1980.
*802 Phelps, Dunbar, Marks, Claverie & Sims, Rutledge C. Clement, Jr., New Orleans, for plaintiff-appellee.
Johnston & Duplass, Lawrence J. Duplass, New Orleans, for defendants-appellants.
Before GARRISON, CHEHARDY and STOULIG, JJ.
CHEHARDY, Judge.
Plaintiff, Dennis Miller Pest Control, Inc., obtained a judgment permanently enjoining Dennis Miller, Jr., and several defendant corporations in which he has controlling interest from operating a pest control and termite exterminating business under any trade name deceptively similar to that of plaintiff. This litigation grows out of a series of business transactions between plaintiff and Dennis Miller, Jr., that were *803 entered into after the Martin Company purchased the plaintiff corporation from Dennis Miller, Sr., in 1973 for $450,000. On May 28, 1973, Dennis Miller Pest Control, Inc., after having been acquired by Martin, entered into a written agreement to employ Dennis Miller, Jr., as president and general manager of the company for a period of five years. In addition to a salary, Miller, Jr., as part of his compensation for services, was to be permitted to occupy living quarters located above the business offices of Dennis Miller Pest Control, Inc., at 7829 Fig Street.
On August 20, 1976, plaintiff corporation and Dennis Miller, Jr., entered into a written agreement to terminate the employment contract. Thereafter, Miller, Jr., still occupying the Fig Street quarters with plaintiff's permission, opened a business for repairs of automobiles and transmissions which he discontinued after three months. Then in November, 1976, he opened a termite and pest control business under the trade name of Denney Miller, Jr. Exterminating, Inc. Plaintiff also demanded damages for unfair competition, which, it contends, should be trebled under the Unfair Trade Practices and Consumer Law, L.R.S. 51:1401 et seq.
Plaintiff additionally demanded rent of $2,000 for occupancy of the Fig premises from August 20, 1976 through May 1, 1977; utilities of $372.39; and reimbursement for damages to the furnishing and appliances in the quarters Miller, Jr., occupied.
By reconventional demand, Miller, Jr., demanded that plaintiff refund $4,750, the deposit he made in connection with an agreement to purchase the Fig Street property which was never transferred because he could not obtain the necessary financing.
All litigants have appealed the judgment of the trial court which (1) granted the permanent injunction prohibiting Denney Miller, Jr., from using his name in the trade name of a pest control company so that it was deceptively similar to that of plaintiff; (2) permitted Miller, Jr., to use the name Denney Exterminating, Inc.; (3) awarded plaintiff $1,670.95 rental against Denney Miller, Jr., for his occupancy of the Fig Street property from August 21, 1976 through April 30, 1977 at the rate of $200 per month; (4) ordered plaintiff to return the $4,750 deposit given in connection with the agreement to purchase; and (5) rejected all demand for damages and attorney fees.

THE PRELIMINARY INJUNCTION
Plaintiff, after paying Dennis Miller, Sr., $450,000, began operations of its business under a logo that was well established in this area. After the new owner was operating three years, Miller, Jr., originally employed by plaintiff, went into his own business, first as Denney Miller, Jr. Pest Control, Inc. Subsequent to plaintiff's filing and obtaining injunctive relief against the use of this similar name and while this matter was still pending in the trial court before the merits of the permanent injunction were heard, defendant Dennis Miller, Jr., began conducting business as "Denney Miller, Jr. Extermination, Inc." and "Denney Miller, Jr., Exterminating, Inc." The record reflects that while Miller, Jr., used these various trade names plaintiff corporation's identity was confused with the various Miller, Jr., entities in that customers of Miller, Jr., would call plaintiff to complain, the bank where both plaintiff and defendant had accounts confused the accounts, the mail for one was delivered to the other and plaintiff's employees received several calls daily for Denney Miller, Jr., long after he left. The trial court, in issuing the injunction, concluded any combination of the full name "Dennis" and "Miller" in a trade name, or even the name "Miller" alone would create confusion. On appeal, Miller, Jr., argues this result deprives him of the right to use his name and cites White v. White, 68 So.2d 648 (La.App. 1st Cir. 1953), for the proposition that anyone has the right to use his own name in doing business even if it is identical with that of a competitor. However, the White rules is not absolute. The court noted the name must be used honestly and may not be employed to accomplish a deceitful purpose. We quote this summary of the rule from White:

*804 "The Louisiana Supreme Court in 1920, in the case of Tharp-Bultman-Southeimer Co. v. Tharp-Southeimer-Tharp, Inc., 147 La. 765, 85 So. 906, which case is very similar to the case at bar, stated the principle of law as follows:
`The weight of jurisprudence in this country sustains the doctrine that, in the absence of a contract restricting the exercise of such right (and the capacity for such restriction is limited), everyone may use his own name honestly, in his own business, and in the earning of his own livelihood and that of his family, but no one may lawfully resort to artifice or deceit for the purpose, or with the intent and effect of misleading or confusing the public and palming off his services, goods or products as that of another.'" 68 So.2d at 650.
In the case before us, the evidence leaves no doubt that the use by Miller, Jr., of the name Denney Miller, Jr. Pest Control, Inc., created confusion and caused plaintiff to lose a certain number of its accounts. L.R.S. 51:223 gives the owner of a service mark that has been wrongfully converted and used by another the right to injunctive relief. When one business appropriates a name similar to that of an established competitor which diverts good will of the established business to the new entity due to confusion, the courts will grant injunctive relief. Dynasty Room, Inc. v. Whiskey-A-Go-Go, Inc., 186 So.2d 402 (La. App. 4th Cir. 1966). The trial judge concluded that use by plaintiff of the names Dennis or Denney and Miller would do just that and rob plaintiff of an asset acquired five years earlier.
Plaintiff concedes it had no objection to Miller, Jr., operating a pest control and exterminating business under a name that cannot be confused with its corporation. We think permitting the use of the name "Denney's Exterminating Service" sufficiently distinguishes these entities.

THE RENTAL
Miller, Jr., admits he occupied the premises above the plaintiff's offices rent free from August 21, 1976 through April 30, 1977 and agrees with the trial court's conclusion that rental of $200 based on a quantum meruit theory is adequate. Obviously some compensation is due and we find no error in the sum fixed by the trial court because, absent a specific agreement, an estimated value is the only basis for making an award. Thus the judgment of $1,670.95 was proper. In this connection we note the buy/sell agreement to be hereinafter discussed fixed rental value at $200 per month.

THE DEPOSIT
After signing an offer to buy 7829 Fig Street for $47,500, Dennis Miller, Jr., deposited with plaintiff $4,750. The contract stated that financing of $50,000 payable over a 30-year period was to be obtained and an act of sale passed within 30 days of the signing of the agreement. Miller, Jr., applied to the Veterans Administration for financing and was turned down.
Miller, Jr., testified he did not apply to a homestead for conventional financing because he did not have sufficient cash to satisfy the down payment requirements set by these institutions. When the 30 days expired Miller, Jr., refused to sign an extension of time within which to execute the sale because at this point in time he knew he could not obtain the loan. At no time did plaintiff tender title to Miller, Jr. C.C. art. 1913 provides that in commutative contracts, where the reciprocal obligations are to be performed at the same time, the party wishing to put the other in default must tender performance, otherwise the party would not be legally in default.
The trial judge observed, and we agree, that it is virtually impossible for any purchaser to obtain financing and have an act of sale passed within 30 days as this agreement required. Viewed in the light most favorable to plaintiff, even if Miller, Jr., did not make a bona fide effort to obtain financing, the plaintiff's failure to tender performance had the effect of negating the agreement once the time specified for execution expired. We find that Miller, Jr., in *805 applying for V.A. financing, made a good faith effort to comply with the terms of the agreement, vague as they were.

DAMAGES
The trial court rejected plaintiff's demand for damages it alleges it suffered due to Miller, Jr.'s using a deceptively similar name because plaintiff failed to sustain its burden of proof. We agree. Although it was demonstrated that Dennis Miller Pest Control, Inc., lost accounts to Miller, Jr.'s firm, witnesses who themselves are involved in the pest control business stated that customers often place business because of the individual servicing the account, not because of any loyalty to the firm. Thus some loss of customers to Miller, Jr., was to be expected.
While the amount of accounts which transferred from plaintiff to Miller, Jr.'s firm might have been somewhat high, plaintiff failed to establish exactly what amounts of profit it lost. The only financial information furnished was that plaintiff's monthly billings diminished after Miller, Jr., left the firm and opened his own business. Thus we have a comparison of gross receipts for two different periods which does not prove lost profit. We might also mention that plaintiff's management was in a state of flux because they changed branch managers frequently during this period of time when profits dropped. This too could have contributed in large measure to the business decline experienced by plaintiff. In any event the proof offered is insufficient to establish any damage was sustained in the form of lost profits. Likewise the evidence to the effect that Miller, Jr., damaged the furniture and fixtures in the apartment he occupied on Fig Street is also fuzzy. The trial court concluded in both cases the proof was insufficient and we are in full agreement with his finding.
For the reasons assigned, the judgment appealed from is affirmed. Each litigant is to pay his own costs of appeal.
AFFIRMED.