636 So.2d 218 (1994)
Joan Dantonio, Wife of and Joseph A. BARRERA and
Suzanne Sabrio, Wife of and Douglas H. Boudreaux
v.
Mrs. Mary Fontana, Wife of and Felix J. CIOLINO.
CIOLINO PHARMACY, INC.
v.
Joan Dantonio, Wife of and Joseph A. BARRERA, and
Suzanne Sabrio, Wife of and Douglas H. Boudreaux.
No. 92-C-2844.
Supreme Court of Louisiana.
 
May 5, 1994.
*219 Eugene M. McEachin, Jr., Robert A. Knight, Bernard, Cassisa, Saporito & Elliott, Metairie, for applicants.
William C. Credo, Metairie, for respondents.
LEMMON, Justice.[*]
This case involves the 1977 credit sale of a pharmacy business, with its good will, its movables and its prescriptions on file, for $1,350,000. The principal issue is the effect to be given to the following contractual provision:
[P]urchasers shall have the right to use the business name of "Ciolino Pharmacy" for the conduct of their business at 4650 West Esplanade Avenue ..., until such time that vendor gives to purchaser six months prior advance notice to cease and desist.... Should purchaser use the said business name after notice ..., the purchasers agree to pay vendors, as liquidated damages, the sum of $100.00 per day ... [plus] attorney fees for ... any necessary action by vendors to enjoin the unauthorized use of said business name.
We now reverse the judgments of the lower courts refusing to enforce the clear provisions of the business name provision as totally inconsistent with the $1,350,000 sale price when parol evidence showed that, after deduction of the value of the physical assets, the sum of $827,851 was attributable to good will. Both the pertinent Civil Code articles and the prior decisions of this court, including one squarely holding that the sale of good will does not impliedly include a business name using the seller's family name,[1] dictate the opposite result.

I
Felix Ciolino, a licensed pharmacist for over forty years, opened the Ciolino Pharmacy in Metairie in 1974. On July 7, 1977, by written act of sale and chattel mortgage for *220 the single, non-itemized, all-credit price of $1,350,000,[2] he and his wife sold to pharmacists Joseph A. Barrera and Douglas H. Boudreaux (who worked in the Ciolino Pharmacy) and their wives the following:
I. The trade, business and asset known as "Ciolino Pharmacy", together with all the good will thereof, located at 4650 West Esplanade Avenue, Metairie, Louisiana;
II. All of the movables and property of the said business ... described as follows:
(1) The entire stock of merchandise....
(2) Carrier Air Conditioner Unit and Compressors (25 tons) [and fixtures, equipment, furniture, furnishings, etc., described in detail, plus 30,000 prescriptions on file].
The typewritten act further provided in the last paragraph:
It is agreed that purchasers shall have the right to use the business name of "Ciolino Pharmacy" for the conduct of their business at 4650 West Esplanade Avenue, Metairie, Louisiana, including the right to use same on any signs, prescriptions, labels or any form of advertising, until such time that vendor gives to purchaser six months prior advance notice to cease and desist with the use of said business name of "Ciolino Pharmacy." Should purchaser use the said business name after notice to cease and desist has been given as hereinbefore provided, the purchasers agree to pay vendors, as liquidated damages, the sum of $100.00 per day for as long as such violation shall continue, in addition to reasonable attorney fees for the institution and prosecution of any necessary action by vendors to enjoin the unauthorized use of said business name.[3]
The buyers thereafter made some use of the name Ciolino Pharmacy, but at least as early as 1982 the name used in their full-page newspaper advertisements was not "Ciolino Pharmacy," but "Ciolino B & B Pharmacy."[4]
On August 13, 1987, more than ten years after the sale, the Ciolinos gave the Barreras and Boudreauxs a six-month notice to cease using the name Ciolino Pharmacy. In the meantime Felix Ciolino had formed a corporation named Ciolino Pharmacy, Inc. and had registered Ciolino Pharmacy as a trade name. And shortly after giving the notice to cease using the name Ciolino Pharmacy, he placed a sign advertising "Ciolino Pharmacy open soon" on a building on Veterans Boulevard in Metairie.
On September 11, 1987, the Barreras and Boudreauxs sued to enjoin the Ciolinos from using the name Ciolino Pharmacy. The Ciolinos reconvened for a declaratory judgment declaring (1) that the contract gave the buyers only a non-exclusive right to use the name (even during the contract's six-month notice period); (2) that that right would terminate on February 13, 1988, six months after the notice; and (3) that the buyers must pay the liquidated damages of $100 for every day thereafter they use the name, plus attorneys' fees if action to enjoin becomes necessary.[5]
On October 22, 1987, the district court preliminarily enjoined the Ciolinos from using the name Ciolino Pharmacy.
*221 On October 29, 1987, at the Veterans Boulevard site, Ciolino and his pharmacist son Steven opened "C's Discount Pharmacy."[6]
At the trial on the merits, the judge ruled inadmissible several offers by the Barreras and Boudreauxs of parol evidence, while allowing proffers (oral statements before or after the contract, as well as a 1976 "agreement to purchase and sell" with no mention of good will, nor of name, and for a different price). In excluding this parol evidence, the judge noted more than once the absence of any pleading of fraud or duress or even of mutual mistake.
Judgment was rendered (1) declaring buyers "the sole and rightful owners of the trade name `Ciolino Pharmacy'"; (2) declaring invalid the Ciolinos' registration of the trade name Ciolino Pharmacy and the corporate name Ciolino Pharmacy, Inc.; (3) permanently enjoining the Ciolinos "from using the name `Ciolino Pharmacy' in any commercial capacity"; and (4) dismissing the Ciolinos' demand for declaratory judgment.[7] Citing parol evidence by a certified public accountant who, by deducting what he deemed to be the value of the physical assets of the pharmacy from the $1,350,000 credit sale price, calculated Barrera and Boudreaux had paid $827,851 for the good will of the business, the trial judge reasoned that payment of that amount for good will "had to" include the name Ciolino Pharmacy.[8] The judge further stated that the reputation of the Ciolino Pharmacy was continued over a ten-year period through the work and effort of Barrera and Boudreaux, and that "[t]o allow a seller an indefinite period to reclaim a name after the buyer's work has made that name into a commercially identifiable name would fly in the face of presumed equitable dealings as envisioned by our Civil Code."[9] Accordingly, the judge ruled that the business name Ciolino Pharmacy was included in the good will and was sold in 1977 with the sale of inventory, equipment and furnishings, and that the 1977 contract's limitation on the use of the sellers' name was "totally void and inconsistent with the sale" for that amount. He not only refused to enjoin Barrera and Boudreaux from using the name in accordance with the contract's name clause, but, quite the reverse, he enjoined the Ciolinos from using their own name for their pharmacy.
The court of appeal affirmed, with one judge concurring. 606 So.2d 912. The majority used the parol evidence of the accountant's value inferences in asserting that "[t]he price [of the sale] was $1,350,000 which included $827,000 for good will and the name `Ciolino Pharmacy.'" (emphasis added). Although citing two cases for the proposition that a transfer of "trade name and good will" must be express to be effective, the majority nevertheless found an implied transfer of the family business name on the basis of the "common intent of the parties" provision of La.Civ.Code art. 2045.[10] The majority declared "the clear intention of the parties was to convey the name `Ciolino Pharmacy' to the purchasers."
*222 We granted the Ciolinos' application for writs because of two concerns. 609 So.2d 238. First, we believed the court of appeal was correct in stating, but incorrect in not applying its statement, that any sale of a professional business name, at least one composed of the seller's own name, must be express to be effective. Vonderbank v. Schmidt, 44 La.Ann. 264, 10 So. 616 (1892). Expressness seems an absolute requirement if, as the lower courts here ruled, such a sale prohibits a professional person from using his or her own name in a customary professional business name. To prohibit a professional person from using his or her own name in professional practice is a restraint of trade, tantamount to a non-competition agreement which was strictly construed even before the 1989 prohibition now included in La.Rev.Stat. 23:921.[11]Railway Audit & Inspection Co. v. Pendleton, 175 La. 4, 142 So. 781 (1932); Tharp-Bultman-Sontheimer Co. v. Tharp-Sontheimer-Tharp, Inc., 147 La. 765, 85 So. 906 (1920); Plunkett v. D & L Family Pharmacy, Inc., 562 So.2d 1048 (La. App. 3d Cir.1990).
Second, we were concerned that the lower courts gave to the common-intent-seeking rule of La.Civ.Code art. 2045 and former art. 1945(4)[12] an unwarranted primacy, not only over the specific rule of former La.Civ.Code art. 1955 that contract provisions must be interpreted "the one by the other,"[13] but even over the fundamental principle of freedom of contract,[14] as well as over the principles that the contract constitutes the law between the parties,[15] and that the intent is to be determined by the words of the contract, when clear and explicit and without absurd consequence.[16]

II
While the Louisiana Civil Code does provide that the common intent of the parties is to be sought in interpreting contracts, there are many other Code articles that interplay in the interpretation of contracts in general and of this particular contract.
First, former La.Civ.Code art. 1955 required that contract provisions be interpreted *223 "the one by the other." To seek intent by inference from one contract provision, interpreted by parol evidence, to the exclusion of another contract provision that is clear, explicit and specific, disregards former Article 1955 and present Article 2050.
The two clauses at issue in the 1977 contract of salethe clause selling the business's good will and the clause granting limited use of the business namemust be interpreted one by the other. Notwithstanding that some might infer that sale of business good will ought to include sale of the family business name, one cannot reasonably so interpret "good will" in this contract, because "the other" clause not only expressly grants only a limited use of the business name, but also penalizes use of the name beyond that grant by liquidated damages of $100 per day. Thus, the name clause, rather than being "void" for inconsistency with a hypothetical interpretation of "good will" in the sale clause, obliges a court to reject that interpretation of the sale clause.
It was therefore error for the lower courts to hold that the earlier sale clause of the contract makes the later name clause void.[17]
Second, the lower courts' invalidating the name clause of this contract cannot be reconciled with the bedrock principle of freedom to contract that "[p]arties are free to contract for any object that is lawful, possible and determined or determinable." La.Civ. Code art. 1971. Courts do not have "the prerogative to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature" in laws providing broad freedom to contract. Daigle v. Clemco Industries, 613 So.2d 619, 624 (La.1993). Thus, courts may not, for example, override a contract compromising a wrongful death action before the death occurs, because to do so "underestimate[s] the importance and strength of the Civil Code principles establishing freedom to contract" on all matters not forbidden by law. Id. at 623.
Even if the sale of business good will would ordinarily convey the business name, parties nevertheless have the freedom to contract for a sale including good will, but expressly excluding the business name. And the parties' freedom is not diminished by a court's view that the price of the contract was too high not to include the name. A contract selling good will, but allowing the use of the business name for only six months, is equally within the parties' freedom to contract.
The contract in this case did exactly that; it allowed to the buyers the guaranteed use of the family business name for at least six months, for if the sellers had given notice to cease immediately after the sale (or whenever), the contract would have entitled the buyers to continue to use the name for the following six months. After that six-month period, however, the contract expressly requires that the buyers cease using the old name, and pay daily liquidated damages if they do not. Freedom to contract allows such a contract, and, as we said in Daigle, Louisiana courts "are not authorized to review otherwise valid contracts to determine whether they conform to judicial notions of `morals, moral conduct and public order.'" 613 So.2d at 624. The lower courts' judgments fail to accede to, in Daigle's words, "the importance and strength of the Civil Code principles establishing freedom to contract." 613 So.2d at 623.
Third, the judgments of the lower courts also disregard the further balance that the Legislature in La.Civ.Code art. 1983 and former art. 1945 has struck in making the contract the law between the parties, not subject to amendment or repeal by a court because of its views of moral conduct and public order, such as the court's view of what ought to be included in a sale with a price deemed to be high.
Last but not least as to common intent, we note the command of former La. Civ.Code art. 1945(3), reiterated in the present La.Civ.Code art. 2046, that "the intent is to be determined by the words of the contract, *224 when these are clear and explicit and lead to no absurd consequences." Courts may not disregard a clear and explicit clause of a contract. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). And parol is not admissible to alter the clear and explicit contract terms. Davis v. Dees, 211 La. 229, 29 So.2d 774, 776 (1947).
The words of the name clause are clear and explicit: the buyers were ceded only a "right to use the business name," and only at 4650 West Esplanade Avenue, Metairie, and only until six months after the sellers have given them notice to end the use. The buyers were, of course, free not to use the name at all. They were also free, during their six months of contract-guaranteed entitlement to use the name, to change over gradually to their own name (perhaps from "Ciolino" to "Ciolino B & B" to "B & B," the latter being the name they used at their other pharmacy and also incorporated into the Ciolino Pharmacy name, at least as of 1982 in their "typical" full-page newspaper advertisements).
Nor do the contract words lead to any absurd consequences. Rather, they make sense, by affording a minimum period of six months for the buyers to use up the stock of printed matter and to wean their patrons, acquired largely from the 30,000 prescriptions on file and included in the sale, from the old to the new name and ownership of the West Esplanade pharmacy.[18]
The words of Vonderbank v. Schmidt, 44 La.Ann. 264, 10 So. 616, 618 (1892), quoting with approval Cottrell v. Babcock Printing-Press Manufacturing Co., 54 Conn. 138, 6 A. 791 (1886), are appropriate:
By purchasing the good-will merely, [the buyer] secured the right to conduct the old business at the old stand, with the probability in his favor that the old customers would continue to go there. If he desired more he should have procured it by positive agreement. The matter of good-will was in his mind. Presumably he obtained all that he desired. At any rate, the express contract is the measure of his right....
Louisiana courts, in interpreting contracts, are indeed obliged by the Civil Code to seek the common intent of the parties. But that intent must first be sought in the words of the contract provisions, interpreted in the light of each other, with no further search for intent where the words are clear and explicit and have no absurd consequence. Interpretation may not override the parties' freedom to contract, and may not ignore the basic concept that the contract is the law between the parties.

III
The lower courts overlooked not only the appropriate Civil Code articles, as above discussed, but also the decisions of this court, and thus mistook this contract's effect upon both the buyers' and the sellers' rights to use the sellers' name.
The case of Vonderbank v. Schmidt, 44 La.Ann. 264, 10 So. 616, 620 (1892), held that a sale of a business with its good will does not include a business name using the seller's family name (there, "Vonderbank Hotel"). Noting one's right to the "free and unrestricted" honest business use of his own name even if it infringed another's trade name, Vonderbank distinguished fictitious names from family names. "This distinction makes it clear that the employment of one's own name to designate his place of business cannot be considered as an element of goodwill...." 10 So. at 620.
The case of Cire & Delhomme v. DeGruy, 160 La. 336, 107 So. 130 (1926), by holding that the sale of a business with its good will may include a business's fictitious name (there, "Bijou No. 5" drugstore), is consistent with Vonderbank's distinction between fictitious names and family names.
Sale of a business and its good will does not preclude the seller from competing in a similar business, not even shortly thereafter and in the immediate vicinity. Bergamini *225 v. Bastian, 35 La.Ann. 60, 63, 66 (1883) ("in the absence of an express stipulation ... a contract in restraint of trade cannot be presumed and enforced by the courts," citing American and French authorities);[19]Davis v. Dees, 211 La. 229, 29 So.2d 774, 776 (1947) ("in the absence of an expressed stipulation..., sale of the good will ... did not preclude... engaging in a similar undertaking"). Here, the buyers could have sought a non-competition agreement, but none is included in the contract.
A business identified by a family name may be sold with expressly exclusive use of the business name, and that express agreement will be enforced. Albrecht v. Del Bondio, 188 La. 502, 177 So. 587 (1937). Or, as Vonderbank suggests, a family name may become so identified with a manufactured product as to become "impersonal" and may then be transferred by the simple sale of the right to manufacture the product. But such a transfer is "subject to the exception that a person has the right to use his own name unless he has expressly contracted otherwise." 10 So. at 620.
Even where a geographic or descriptive trade name has acquired a "secondary meaning" identifying it with the particular business (as the buyers here alleged but did not prove), one must prove fraud to enjoin another's use of a similar name. Home Beverage Serv. v. Baas, 210 La. 873, 28 So.2d 481 (1946); Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964). See also Yellow Cab Co. of N.O. v. Jones, 156 La. 837, 101 So. 216 (1924); New Orleans Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944).
Most significantly, any contract that does restrict one's right to use one's own name honestly in business must be express and must be strictly construed. Tharp-Bultman-Sontheimer Co. v. Tharp-Sontheimer-Tharp, Inc., 147 La. 765, 85 So. 906 (1920); Railway Audit & Inspection Co. v. Pendleton, 175 La. 4, 142 So. 781 (1932). And a non-competition contract that is unlimited as to time and place is void. Moorman & Givens v. Parkerson, 127 La. 835, 54 So. 47 (1911).
Reaffirming the holding of Vonderbank v. Schmidt, and in compliance with the Civil Code articles discussed above, we hold that the sale of the Ciolino Pharmacy business and its good will did not impliedly transfer the business name Ciolino Pharmacy to the buyers.[20] Nor, as the cited cases show, did that sale of good will impliedly prevent pharmacist Ciolino from engaging in the pharmacy business in his own name. While the contract did expressly grant use of the business name to the buyers, it granted only a use limited to six months after notice to cease, and limited to one site. That grant of temporary use was not a grant of exclusive use because it does not expressly so provide, and it must be strictly construed. The buyers therefore had no right to enjoin the Ciolinos' use of the name Ciolino Pharmacy, not even during the time that the contract allowed the buyers themselves a limited use.

Decree
The judgments of the lower courts are therefore reversed, and, effective immediately, the injunctions against the Ciolinos and invalidation of their trade and corporate name registrations are annulled. The matter is remanded to the trial court to issue an injunction against the Barreras and Boudreauxs in accordance with the contract, and to consider the Ciolinos' claims for contractual *226 liquidated damages[21] and for attorney fees for any necessary injunctive action, and for assessment of costs.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Marcus, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Vonderbank v. Schmidt, 44 La.Ann. 264, 10 So. 616 (1892).
[2] One note, payable in two installments of $100,000 and $250,000, was due within six months. A second note for $ 1,000,000 was payable in monthly installments of $8,364.50 each.
[3] A twenty-year lease of the West Esplanade premises from the sellers to the buyers, executed on the same day, provided for immediate eviction for unlawful activity. This provision was inconsistent with the buyers' imputation in parol testimony that the purpose of the name clause in the sale was to afford the sellers a mechanism for terminating the use of the Ciolino name if the buyers sold drugs illegally or engaged in other unlawful activity on the premises. That parol was "clearly inadmissible" to expand the meaning of good will. Davis v. Dees, 211 La. 229, 29 So.2d 774 (1947); La.Civ.Code art. 1848, replacing La.Civ.Code art. 2276 (1870).
[4] Exhibit B & B-7. Barrera testified that the advertisements of "Ciolino B & B" were "typical" of those on which he and Boudreaux spent over $100,000 in advertising the name Ciolino Pharmacy. They also advertised, in similar full pages, their "B & B Pharmacy" on Canal Boulevard in New Orleans, but Exhibit B & B-7 advertises only the West Esplanade pharmacy.
[5] Ciolino Pharmacy, Inc., Felix Ciolino's newly formed corporation, also sued to enjoin the buyers' use of the name, and the suits were consolidated.
[6] Below that name, on the building front, was added, in much smaller letters, "Felix Ciolino PharmacistsSteven Ciolino." Barrera's and Boudreaux's contempt rule against the Ciolinos for so using their own name was dismissed by the district court.
[7] The trial judge died while the case was under advisement, and the parties stipulated that the successor judge would decide the case on the record. There was therefore a lengthy period of time between the trial and the judgment.
[8] A salesman to pharmacies testified that the presale reputation of the Ciolino Pharmacy was "outstanding." Boudreaux himself testified that "we've tried to uphold the connotation of what the name represented" when Ciolino ran the pharmacy.
[9] The trial judge also declared: "The name use clause is a resolutory condition under LSA C.C. Article 1770. The right to enforce that provision clearly prescribed as a personal right after ten years."

Because terminating the temporary allowance of name use does not dissolve the sale, the clause was not a resolutory condition. And to use another's name under contract is not adverse possession for acquisitive prescription which, if applicable to a name, is the only prescription against ownership. La.Civ.Code art. 481. In any case, a court may not supply a plea of prescription. La.Civ.Code art. 3452; La.Code Civ.Proc. art. 927.
[10] La.Civ.Code art. 2045 provides:

Interpretation of a contract is the determination of the common intent of the parties.
[11] After 1989, an agreement restraining exercise of a lawful profession for any period more than two years, or in an undefined area, is prohibited. La.Rev.Stat. 23:921, as amended by La.Acts 1989, No. 639.
[12] Former La.Civ.Code art. 1945 provided:

Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
. . . . .
FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
Article 2045, enacted in 1984 after this 1977 contract, was a largely semantic revision of former Article 1945 and other articles. By referring to the old, we do not imply that the new text would not govern in the event of conflict.
[13] Former La.Civ.Code art. 1955 provided:

All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.
La.Civ.Code art. 2050 now provides:
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
[14] La.Civ.Code art. 1971 provides:

Parties are free to contract for any object that is lawful, possible, and determined or determinable.
Former La.Civ.Code art. 1764 provided:
All things that are not forbidden by law, may legally become the subject of, or the motive for contracts....
[15] La.Civ.Code art. 1983 provides:

Contracts have the effect of law for the parties....
Former La.Civ.Code art. 1945 provided:
Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them....
See also La.Civ.Code art. 2046, Revision Comment (c), which states:
This Article effects a synthesis of C.C. Arts. 1945(3) and 13 (1870). If a contract is the private law of the parties, there is no reason not to apply to it the rule of interpretation that C.C. art. 13 (1870) provides for the interpretation of laws.
[16] La.Civ.Code art. 2046 provides:

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
Former La.Civ.Code art. 1945(3) provided:
[T]he intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences....
[17] One clause overrides another only under special circumstances, as when a contradictory clause has been added by hand or typewriter to a printed form contract. See, e.g., Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966).
[18] The trial judge's criticizing the sellers' "reclaiming" their name after the buyers made it "commercially identifiable" ignores the buyers' own evidence of the "outstanding" presale reputation of the Ciolino Pharmacy which the buyers "tried to uphold," as well as ignoring the explicit contract. Compare La.Civ.Code art. 1967 on detrimental reliance.
[19] Bergamini gives Justice Story's much quoted, often paraphrased definition of good will:

Good-will is the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or other property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.
35 La.Ann. at 63.
[20] J. Alfred Mouton, Inc. v. Hebert, 199 So. 172 (La.App. 1st Cir.1940), and Karageorge v. Cole, 565 So.2d 502 (La.App. 2d Cir.1990), cited by the court of appeal as including in business good will every advantage connected with the name, are disapproved insofar as their dicta are contrary to Vonderbank.
[21] The Ciolinos may have abandoned their claim for liquidated damages. In oral argument counsel for the Ciolinos stated: "I'm not here for money. I've had no monetary discussions with my clients other than about the fee arrangements, but they want their name back. They don't want the penalty; that's not what we're here for."