IzGONZALES, Judge.
This is an appeal by the defendant, East Baton Rouge Parish School Board (School Board), from a judgment ordering that the plaintiff, Joseph Jones, Jr., is eligible for reinstatement as a classroom teacher with the East Baton Rouge Parish School Board system effective June 29, 1992. Mr. Jones answered the appeal, seeking to have the date of reinstatement changed to April 19, 1991 and also seeking an award of lost wages in a specific amount.
FACTS AND PROCEDURAL HISTORY
During the 1990-1991 school year, Mr. Jones was employed by the School Board as a social studies teacher and football coach at Glen Oaks High School. On October 11, 1990, Mr. Jones was involved in an altercation with one of the football players at a practice session. As a result of the altercation, simple battery charges were brought against Mr. Jones.
On or about October 24, 1990, a meeting was held to address the ramifications of the criminal charges against Mr. Jones. In attendance at the meeting were Mr. Jones; David Hamilton, Mr. Jones’ attorney; David Lovely, Executive Director of the East Baton Rouge Federation of Teachers; Bernard J. Weiss, Superintendent of the School Board; Robert Williams, Secondary Director of the School Board; Annette Mire, Director of Human Resources for the School Board; and Robert Hammonds, general counsel for the School Board.
As a result of the meeting, Hammonds drafted an agreement memorializing the “understandings” reached at the meeting. The agreement, which is in letter form addressed to Mr. Hamilton and dated October 29, 1990, reads as follows:
Dear Mr. Hamilton:
This letter serves to confirm the “understandings” which were reached between Dr. Bernard J. Weiss and your client, Mr. Joe Jones, during a meeting between the parties at the School Board office on October 24, 1990. My understanding of the agreement is as follows:
*455 ls(l) Coach Jones will immediately submit a letter requesting that he be placed on leave without pay beginning November 2, 1990 and lasting until completion of the criminal proceedings concerning him which are presently underway; it is my understanding that such written request has already been submitted to the Personnel Department of the School Board.
(2) Between October 24, 1990 and November 2, 1990, Coach Jones will be allowed to use accumulated sick leave.
(3) During the period of his leave without pay, Coach Jones will undergo psychological and/or psychiatric counseling aimed at curtailing future violent behavior, particularly that behavior affecting students.
(4) If the criminal charges against Coach Jones are dismissed or he is exonerated therefrom, he will become immediately eligible for reinstatement as a classroom teacher in the East Baton Rouge Parish School Board system. His actual return to teaching will be conditioned on a report from his consulting psychologist or psychiatrist indicating that he is mentally and emotionally fit to do so. He will not be reassigned to Glen Oaks High School nor will he be returned to coaching.
(5) If Coach Jones pleads guilty or no contest to the criminal charge, or, if he is found guilty of that charge at the district court level, he shall immediately submit a letter of resignation to the school system.
(6) The School Board shall continue to pay Coach Jones’ premium under the group health insurance plan, but he will be responsible for payment of the full premium for any dependents he might carry on that coverage.
(7) Regardless of the outcome of the criminal proceeding, a report of the incident in question and the staff’s investigation thereof will be prepared and filed in the official personnel file of Coach Jones.
Please review this letter carefully with your client. If you and he feel that it correctly delineates the agreement which was reached, I would ask that both of you execute it in the appropriate places and return it to my office. There will be no disclosure of this agreement or any of the terms of it, with the exception of the press release which was issued on October 24, 1990 after review and approval by you.
If you have any questions about this matter, please do not hesitate to contact me.
Very truly yours,
s/Robert L. Hammonds ROBERT L. HAMMONDS
RLH/yp
I have carefully reviewed the terms and conditions outlined above and both understand and agree with them. I also understand and acknowledge that, by agreeing to these terms and conditions, I may be waiving rights afforded to me under the Louisiana Teacher’s Tenure Law, L[a].R.S. 17:441 et seq. or other laws. My rights and options in this matter have been fully explained to me by my attorney and, after receiving such advice, I freely and voluntarily agree to abide by the terms and conditions outlined above.
s/Joe Jones JOE JONES 11/1/90 DATE
s/David Hamilton DAVID A. HAMILTON Attorney at Law 1 Nov 1990 DATE
Uln accordance with the agreement, Mr. Jones requested and was granted leave without pay, effective from November 2, 1990 until the completion of the criminal proceedings. Also in accordance with the agreement, Mr. Jones obtained counseling from Dr. Thomas Fain, a clinical psychologist. As of December 1990, Dr. Fain was of the opinion that Mr. Jones was mentally and emotionally fit to return to work for the School Board.
On March 5,1991, following a criminal trial on the merits, Mr. Jones was found guilty of simple battery and sentenced under La. *456 C.Cr.P. article 894[1] to unsupervised probation and ordered to perform twenty hours of court-approved community service. Mr. Jones appealed his conviction to this court.
Pending the appeal, on March 15, 1991, a second meeting was held at the School Board’s central office. Mr. Jones was reminded of his agreement to submit a letter of resignation immediately upon being found guilty at the district court level. Mr. Hamilton, speaking on behalf of Mr. Jones, requested that the actual effective date of the resignation be delayed until March 29, 1991 so that Mr. Jones could make arrangements to obtain appropriate insurance coverage. This request was agreed to on the condition that Mr. Jones' submit the letter of resignation by 4:30 p.m. on March 15,1991. However, Mr. Jones did not submit the letter, and effective May 31, 1991, the School Board terminated his employment.
|6On April 19, 1991, the district court entered an acquittal under La.C.Cr.P. art. 894 based upon Mr. Jones’ successful completion of the twenty hours of community service.
On March 5,1992, Mr. Jones filed this suit against the School Board seeking reinstatement and back pay retroactive to the date of his article 894 acquittal.
On June 29, 1992, this court reversed Mr. Jones’ conviction, concluding “that any rational trier of fact, after viewing all of the evidence in a light most favorable to the prosecution, necessarily must have a reasonable doubt as to defendant’s guilt.” State of Louisiana v. Joseph Jones, Jr., 92 KW 0317, p. 8, 610 So.2d 1127 (La.App. 1st Cir. 6/29/92) (unpublished opinion).
Following a trial of Mr. Jones’ civil suit against the School Board, held on August 20, 1993, judgment was rendered by the trial court ordering that: (1) Mr. Jones was exonerated from the criminal charges of simple battery on June 29, 1992, the date of the appellate court’s decision reversing the conviction, and (2) Mr. Jones was eligible for reinstatement as a classroom teacher in the East Baton Rouge Parish School Board system, effective June 29,1992, as well as for all benefits. The judgment also reserved to the parties the right to seek rehearing upon notice as to damages or lost wages.
In oral reasons for judgment, the trial court indicated that paragraph numbers four and five of the agreement were inconsistent and rendered the agreement ambiguous. Based on the interpretive legal principle that a contract is to be construed against the party who drafted it, the trial court found that the School Board’s attorney, Mr. Ham-monds, had prepared the agreement, and thus the School Board was the party against whom the agreement was to be interpreted. The court then stated “it’s the court’s finding that Joseph Jones, Jr. was exonerated by the 1st Circuit Court of Appeal on or about June 29, 1992, and that suffices for him to be eligible for reinstatement in accordance with the agreement; and he is ordered to be eligible for reinstatement.”
The School Board appeals the judgment of the trial court and asserts the following ^assignments of error:
(1) The trial court abused its discretion and committed reversible legal error by ruling that the agreement dated October 29, 1990 and executed by Jones and his attorney is ambiguous and should therefore be construed against the School Board.
*457 (2)The trial court abused its discretion and committed reversible legal error by ruling that Jones is eligible for reinstatement as a classroom teacher in the East Baton Rouge Parish School Board system effective June 29,1992, as well as all benefits.
INTERPRETATION OF THE AGREEMENT
The School Board argues that the trial court erred in finding that the October 29, 1990 agreement was ambiguous and should therefore be interpreted against the School Board as the party who drafted it.
A contract between parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La.C.C. art. 2045; Martin Exploration Company v. Amoco Production Company, 93-0349 (La.App. 1st Cir. 5/20/94), 637 So.2d 1202, 1205, writ denied, 94-2003 (La. 11/4/94), 644 So.2d 1048. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. La. C.C. art. 2046. Also in determining intent, the words of a contract must be given their generally prevailing meaning. La.C.C. art. 2047. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, and the conduct of the parties before and after the formation of the contract. La.C.C. art. 2053; Martin Exploration Company, 637 So.2d at 1205.
The determination of whether a contract is clear or ambiguous is a question of law. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La. 1/14/94), 630 So.2d 759, 764. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Martin Exploration Company, 637 So.2d at 1206. However, when appellate review is not premised upon any factual findings made at the trial level, but is, ^instead, based upon an independent examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Martin Exploration Company, 637 So.2d at 1206.
In the present case, the trial court found that the agreement between the School Board and Mr. Jones was ambiguous based on provisions contained in paragraphs 4 and 5. Paragraph 4 states that “[i]f the criminal charges against Coach Jones are dismissed or he is exonerated therefrom, he will become immediately eligible for reinstatement as a classroom teacher_” (Emphasis added.) However, Paragraph 5 states that “[i]f Coach Jones ... is found guilty of that charge at the district court level, he shall immediately submit a letter of resignation ...” (Emphasis added.) As can be discerned, Paragraph 5, read alone, clearly provides that a conviction at the district court level would immediately obligate Mr. Jones to resign, regardless of whether or not the conviction was reversed on appeal. Additionally, Paragraph 4, read alone, mandates Mr. Jones’ immediate eligibility for reinstatement if he is exonerated from the criminal charges, regardless of whether that exoneration derives from the district court level or from an appellate court level.
However, these provisions cannot be read in isolation. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050; Barrera v. Ciolino, 92-2844 (La. 5/5/94), 636 So.2d 218, 223. When read in light of each other, we agree with the trial court that paragraphs four and five create ambiguity with regard to Mr. Jones’ rights under the agreement.
When the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties. Martin 8Exploration Company, 637 So.2d at 1205. In this ease, the record contains parol evidence in the form of deposition testimony and affidavits.
In his affidavit, Mr. Hammonds, the person who drafted the agreement, indicates *458 that it was “his intent ... that the agreement provide that Joseph Jones would immediately resign if he was found guilty of the criminal charge at the district court level, notwithstanding the fact that his conviction could be appealed and/or possibly overturned on appeal.” Mr. Hammonds further states that, to his recollection, he discussed this understanding with Mr. Hamilton after the October 24, 1990 meeting and before the agreement was reduced to writing.[2]
However, in his deposition, Mr. Hamilton denies that Mr. Hammonds mentioned to him the particular significance of the use of the phrase “at the district court level” in Paragraph 5, or that he, Mr. Hamilton, agreed to the interpretation now being urged by Mr. Hammonds. In fact, Mr. Hamilton testified in his deposition that, in explaining the terms of the agreement to Mr. Jones prior to signing it, he told him:
... if you get convicted and appeal, based on what I know about criminal law, and the conviction is overturned or reversed and remanded — if it’s reversed and remanded, we go through it again. If the conviction is overturned, you’ve never been found guilty in a district court.
When questioned at the deposition about the meaning of Paragraph 5, Mr. Hamilton testified that in his opinion, “if you get convicted, if the district judge finds you guilty, and then you get that sentence vacated on an appeal, you’ve never been guilty.”
In his deposition, Mr. Jones also testified regarding his interpretation of the agreement. His understanding was that his obligation to resign no longer existed when he was granted an acquittal under the terms of La.C.Cr.P. art. 894. Mr. Jones’ deposition contains no testimony regarding his understanding of the effect of a reversal of a conviction by the appellate court.
IsAfter reviewing the available parol evidence, we find that the true intent of the parties remains unclear. To seek intent by inference from one contract provision, interpreted by parol evidence, to the exclusion of another contract provision that is clear, explicit, and specific, disregards the requirements of article 2050. Barrera, 636 So.2d at 223. Thus, we cannot accept the testimony of Mr. Hammonds as reflecting the true intent of the parties because to do so would require us to read Paragraph 5 of the agreement to the exclusion of Paragraph 4. Because the parol testimony of the parties directly conflicts, it does not persuade this court to accept any particular interpretation of the agreement as the one truly intended by the parties.
Thus, in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La.C.C. art. 2056. The School Board argues that the trial court erred in construing the agreement against it as the drafter of the agreement. It is the School Board’s position that the terms of the agreement were negotiated, agreed to and prepared by all of the parties — Jones, his attorney, and representatives of the School Board. This argument is without merit. Although certain “understandings” may have been reached at the October 24, 1990 meeting, it is clear that the actual reduction of the “understandings” to paper and the actual text chosen for the agreement itself was provided by the School Board through its attorney, Mr. Hammonds. Article 2056 requires that an ambiguous contractual provision be interpreted against the party who furnished its text. Clearly, the furnisher of the text in this instance was the School Board.
Therefore, we agree with the district court that the ambiguous provisions of the agreement must be construed against the School Board and in favor of a finding that the appellate court reversal of Mr. Jones’ conviction constitutes an “exoneration” from the criminal charges brought against him.
ANSWER TO THE APPEAL
In his answer to the appeal, Mr. Jones seeks (1) to have the date of his *459 110remstatement changed from June 29, 1992 to April 19, 1991, and (2) an award of lost wages in a specific amount.
With regard to the date of his reinstatement, Mr. Jones argues that April 19, 1991, the date upon which the district court entered the acquittal from the criminal charge under article 894, is the proper date from which his reinstatement should be made.
Paragraph 4 of the agreement states that Mr. Jones “will become immediately eligible for reinstatement” if the criminal charges against him are “dismissed” or if “he is exonerated therefrom.” When Mr. Jones completed the twenty hours of community service, he moved for and was granted an article 894 “dismissal” of his conviction. It was the opinion of the trial court that an article 894 “dismissal” does not equate to that which is customarily considered a dismissal of criminal charges. Article 894 provides that “[w]hen the imposition of sentence has been suspended by the court, ... the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as an acquittal[.]” This language indicates that an article 894 dismissal does equate to that which is customarily considered a dismissal of criminal charges; however, as used by the parties in paragraph 4 of the contract at issue, “dismissal” and “exoneration” do not include an article 894 dismissal.
We agree with the result reached by the trial court regarding the proper interpretation of paragraph 4 of the agreement. Thus, we find that the trial court correctly determined that the proper date from which Mr. Jones is eligible for reinstatement is June 29, 1992, the date of reversal by the court of appeal.
With regard to Mr. Jones’ argument that a specific award of lost wages should have been made by the trial court, we note that there is a lack of evidence in the record to indicate exactly what benefits accompany a reinstatement as a classroom teacher within the East Baton Rouge Parish School Board system. Thus, there is insufficient evidence from which to make a finding as to Mr. Jones’ claim for lost wages. We also note that the judgment reserved to the parties the right to seek rehearing upon notice as to damages Inor lost wages. For these reasons, we remand the case to the district court for an evidentiary hearing regarding the scope of the benefits available to Mr. Jones as a result of his eligibility for reinstatement.
DECREE
For the above reasons, we AFFIRM the judgment of the trial court, ordering that: (1) Mr. Jones-was exonerated from the criminal charges of simple battery on June 29, 1992, and (2) Mr. Jones is eligible for reinstatement as a classroom teacher in the East Baton Rouge Parish School Board system, effective June 29, 1992, as well as for all benefits. We REMAND the case to the district court for an evidentiary hearing regarding the scope of the benefits available to Mr. Jones as a result of his eligibility for reinstatement.
Costs of this appeal in the amount of $259.01 are assessed to the School Board.
PARRO, J., concurs.

. Louisiana Code of Criminal Procedure article 894 reads, in pertinent part:
A.(l) Notwithstanding any other provision of this Article to the contrary, when a defendant has been convicted of a misdemeanor, except criminal neglect of family, the court may suspend the imposition or the execution of the whole or any part of the sentence imposed, ... and place the defendant on unsupervised probation ..., upon such conditions as the court may fix....

B. ' When the imposition of sentence has been suspended by the court, as authorized by this Article, and the court finds at the conclusion of the period of suspension that the defendant has not been convicted of any other offense during the period of the suspended sentence, and that no criminal charge is pending against him, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as an acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender....

. The record also contains an affidavit by Ms. Annette Mire, the Director of Human Resources for the School Board. In her affidavit, Ms. Mire basically states that her interpretation of the understandings reached at the October 24, 1990 meeting are the same as those given by Mr. Hammonds.